Bobby FARMER, Petitioner,

v.

Edwin FARMER and wife, Eleanor Farmer, Respondents.

Supreme Court of Tennessee.

Sept. 22, 1975.

Gary E. Brewer, Charles R. Terry & Assoc., Morristown, for petitioner.

Richard C. Jessee, Bacon, Dugger & Jessee, Morristown, for respondents.

OPINION

GODDARD, Special Justice.

This case involves the question of whether a general contractor can recover money expended in the construction of a dwelling when he has not complied with the licensing provisions of Chapter 6, Title 62 of the Tennessee Code.

The Chancery Court for Hamblen County awarded Bobby Farmer a judgment in the sum of $4561.98 on the basis of *quantum meruit.* The Court of Appeals reversed and dismissed.

The facts pertinent to our disposition of this case are relatively undisputed. Bobby Farmer, Plaintiff-Petitioner, who will hereinafter be referred to as Builder, is conceded to be a general contractor as defined by Section 62–601 T.C.A. By oral agreement he contracted to construct a dwelling for Edwin Farmer and wife Eleanor Farmer, Defendants-Respondents, hereinafter referred to as Homeowners. The contractor's fee was to be 10 percent of the cost of the

construction, which was estimated to be between $28,000 and $30,000. This estimate included the price of the lot which was purchased by the Builder at a discount and transferred to the Homeowners on June 19, 1972, about the time the construction began.

Upon completion the total cost, including the 10 percent profit, amounted to $47,387, of which the Homeowners had paid $40,660.64. The Chancellor found that the Builder was entitled to a judgment of $4561.98 for labor and material for which he had paid and for which he had not been reimbursed by the Homeowners. This sum did not include the 10 percent profit.

The material proof supports the Chancellor's findings, concurred in by the Court of Appeals, that the cost of the house above the estimate was occasioned by additions and alterations made at the instance of the Homeowners.

This Court, being of the opinion that the second paragraph of Section 62–602 T.C.A. might have application to this case and that it was overlooked both by the Trial Court and the Court of Appeals, granted certiorari. The Section provides as follows:

62–602. Qualifications—License required. —Any person, firm or corporation engaged in general contracting in this state shall be required to submit evidence that he is qualified to engage in general contracting, and shall be licensed as hereinafter provided; and it shall be unlawful for any person, firm or corporation to engage in or offer to engage in general contracting in the state, unless such person, firm or corporation has been duly licensed under the provisions of this chapter, as hereinafter provided.

In all counties of this state having populations in excess of sixty thousand (60,000) according to the federal census of 1960 or any subsequent federal census, all persons, firms or corporations engaged in general contracting within such counties, including such persons, firms or corporations who engage in the construction of residences or dwellings constructed on private property for the purpose of resale, shall be required to submit evidence that such persons, firms or corporations are qualified to engage in general contracting and/or building, and shall be licensed as hereinafter provided; and it shall be unlawful for any person, firm or corporation to engage in, or offer to engage in general contracting or building as hereinabove described, unless such person, firm or corporation has been duly licensed under the provisions of this chapter, as hereinafter provided; provided, however, that corporations, firms or individuals who are the owners of property may construct thereon such buildings, residences or dwellings that are necessary for the individual use of that corporation, firm or individual and are not constructed for the purpose of resale to the general public or to other individuals, firms, or corporations.

This section has had a curious legislative history. The first paragraph is the progeny of Section 1 of Chapter 70 of the Public Acts of 1931, which enacted licensing regulations regarding general contractors. Chapter 70 is substantially the same as Chapter 6, Title 62 of the present Code. This initial act was rewritten by Chapter 135 of the Public Acts of 1945. Section 1 of Chapter 70 was carried forward in Chapter 135 and as Section 7182.24 of the 1950 Code Supplement. Thereafter, it became Section 62–602 T.C.A. By Chapter 162 of the Public Acts of 1965, paragraph one was stricken and paragraph two inserted in its stead. Still later, by Chapter 541 of the Public Acts of 1970, paragraph one was reinserted as the first paragraph of the Section.

Thus, from January 1, 1966 (the effective date of the 1965 act) until March 2, 1970, the legislative prohibition against doing business as a contractor without a license only applied to counties with population in excess of 60,000, according to the 1960 Federal Census or any subsequent federal census. Consequently, during this period an

unlicensed contractor in Hamblen County, which had a population less than 60,000 by both the 1960 and 1970 Census, was not prohibited from engaging in his trade. The 1970 amendment purports to prohibit contracting activity without a license in all counties.

■ Considering the legislative history of these two paragraphs and construing them together and along with the other sections of Chapter Six, we conclude it was the legislative intent that contracting without a license be prohibited except:

(1) in counties of population of 60,000 or more according to the 1960 Federal Census or any subsequent federal census, contractors may construct edifices on their own property for their own personal use, and

(2) in counties with less than 60,000 population, contractors, in addition to building upon their own property for their own use, as provided in the first exception, may also build for resale.

The reason for the first exception is obvious. The second exception is reasonable and proper because prior to purchase the buyer has an opportunity to examine the workmanship of the contractor. In this regard we are candid to confess we do not see any particular reason the Legislature would make this exception only applicable to less populous counties.

In any event, the statute as thus construed does not afford any aid to Plaintiff who was not constructing a house on his own property for his own use or for resale. Consequently, his activities were proscribed under the statute.

As our grant of certiorari was not limited to the construction of the second paragraph of Section 62–602 T.C.A., we deem it proper to review the authorities relied upon and the reasoning employed by the Court of Appeals.

Under the general rule an unlicensed artisan or contractor cannot enforce his contract when the licensing statute or ordinance has been construed as a police measure. 51 Am.Jur.2d., Licenses & Permits § 63, p. 68; 82 A.L.R.2d 1432; 15 Williston on Contracts § 1766, p. 251 and § 1768, p. 268 (3rd Ed. 1972); 6A Corbin on Contracts § 1512, p. 710 (1962).

Prior to the enactment of what is now Section 67–4015 T.C.A. (which, as to revenue measures, permits recovery upon the contract when the privilege tax and penalty have been paid prior to adjudication), the Tennessee courts made no distinction between a police and revenue measure. There is in this State a long, unbroken line of authorities back to the year 1888 to the effect that those unlicensed cannot enforce their contracts:

*Stevenson v. Ewing*, 87 Tenn. 46, 9 S.W. 230 (1888)—(selling real estate);

*Cary-Lombard Lumber Co. v. Thomas*, 92 Tenn. 587, 22 S.W. 743 (1893)—(furnishing materials and lumber);

*Singer Mfg. Co. v. Draper*, 103 Tenn. 262, 52 S.W. 879 (1899)—(selling sewing machines);

*Gilley v. Harrell*, 118 Tenn. 115, 101 S.W. 424 (1906)—(note dealer);

*Wright v. Jackson Construction Co.*, 138 Tenn. 145, 196 S.W. 488 (1917)—(railroad construction); reversed by Supreme Court of United States on other grounds; case styled *Chalker et al. v. Birmingham & N. W. Ry. Co. et al.*, 249 U.S. 522, 39 S.Ct. 366 (1919);

*Wender v. Lobertini*, 151 Tenn. 476, 267 S.W. 367 (1924)—(real estate agent);

*Tenn. Good Roads Co. v. Putnan Const. Co.*, 11 Tenn.App. 485 (1930)—(road construction);

*R. M. Condra & Co. v. Sloan, Irvine & Sloan*, 173 Tenn. 686, 122 S.W.2d 440 (1938) —(insurance);

*Bush Bldg. Co. v. Mayor and Aldermen of Town of Manchester,* 189 Tenn. 203, 225 S.W.2d 31 (1949)—(sewage construction).

■ We note that even in a criminal case, *Ross-Frankel, Inc. v. State,* 179 Tenn. 320, 165 S.W.2d 590 (1942) (reversed on other grounds),[1] the predecessor act was held to be a valid "police measure in the regulation of general contractors."

■ We are not unmindful that an injustice may occur where a contractor has faithfully and fully performed his contract and no complaint is made as to his skill or workmanship.[2]

We are further aware that the statute in question, unlike the statutes in certain other jurisdictions, e. g., Arizona, California, Michigan, does not *in haec verba* deny an unlicensed contractor access to the courts. Such construction, however, has been placed upon this and similar statutes by our appellate courts, and made the public policy of this State.

Petitioner urges that although under the authority above cited he may not proceed on the contract for damages he may, nevertheless, sue for restitution on the basis of *quantum meruit.* We have reviewed cases from other jurisdictions, such as New York, that do permit recovery on this basis. *Lindner Appraisal Corp. v. H. Mabel Frewil Corp.,* 72 Misc.2d 1041, 340 N.Y.S.2d 242 (1973). However, in our jurisdiction, *quantum meruit* has been specifically considered and rejected. *Wright v. Jackson Construction Co.,* supra.

Authorities in the field also recognize that the refusal to grant relief on the basis of *quantum meruit* is the majority view. 15 Williston on Contracts §. 1768, p. 268 (3rd Ed. 1972); 6A Corbin on Contracts § 1512, p. 710 (1962); 82 A.L.R.2d 1440.

We think the cases which deny a recovery on *quantum meruit* under the circumstances here shown, which involve no fraud or overreaching on the part of the Homeowners, are the better reasoned, and are impressed with and adopt the language of the Supreme Court of Washington in *Stewart v. Hammond,* 78 Wash.2d 216, 471 P.2d 90, 92 (1970), wherein the Court said:

> The statute was designed for protection of the public. The overriding public policy must not be defeated by an attempt to accommodate one who has violated its specific provisions, albeit unwittingly. The law will be nullified if noncomplying contractors are permitted to evade the statute by a claim of "unwitting violation" or "undue loss" or by a claim that the other contracting party will be "unduly enriched". Every noncomplying contractor could raise one or all of the suggested defenses. The remedy for those who find themselves in the position of appellant lies with the legislature.

We accordingly are of the opinion that the Court of Appeals was correct. We overrule the assignments of error, and affirm the Court of Appeals. The costs are taxed to the Petitioner.

FONES, C. J., and HARBISON, HENRY and BROCK, JJ., concur.

1. We have also noted that the recitations of the statute then in effect which provide, "In order to safeguard life, health, and property, and to promote public welfare by requiring that only properly qualified persons shall be engaged in general contracting . . ." were not carried forward in the 1950 Code Supplement or in the present Code. We are of the opinion, however, that such intent is implicit in those portions of the statute that do remain in effect.

2. The Homeowners' complaint, except for a brief reference to water "leakage" in the basement, was the cost overrun which, in the main, was caused by their own extravagance. The proof is not developed as to the water problem and we conclude this defect was not of major significance.