**Albert SANTI, Petitioner,**

*v.*

**Wade CRABB d/b/a Wade's Dry Wall Service, Respondent.**

Supreme Court of Tennessee.

Dec. 18, 1978.

Thomas D. Yeaglin, Armstrong, Allen, Braden, Goodman, McBride & Prewitt, Memphis, for appellant.

Lewis K. Garrison, Memphis, for respondent.

## OPINION

HENRY, Chief Justice.

This civil action involves the right of an unlicensed general contractor, dealing with the owner of property, to recover from the owner for the value of his services. The trial judge sustained the owner's motion for summary judgment; the Court of Appeals reversed and remanded. We are of the view that this controversy is controlled by *Farmer v. Farmer*, 528 S.W.2d 539 (Tenn. 1975). Accordingly, we reverse the Court of Appeals and affirm the trial judge.

Petitioner owned a tract of real estate located and situated on Princeton Avenue in the City of Memphis. In the process of constructing a three-family dwelling thereon, at a total cost of approximately $105,-000.00, he contracted with respondent to do certain sheetrock work at a cost of approximately $4,000.00. Petitioner did not utilize the services of a general contractor. Instead, he dealt directly with various persons and entities whose services were needed or required for various portions of the construction.

The motion for summary judgment interposed by the owner was predicated upon the fact that respondent did not have a general contractor's license.

§ 62–601, T.C.A., as it existed at all times pertinent to this action, defined the term "general contractor" as "any person, firm, or corporation who, for a fixed price, fee, commission, or gain" undertakes to erect any structure.

The Court of Appeals held that:

[t]hat definition would certainly include an owner who acts as "general contractor." Once an owner assumes the position of "general contractor" under the statute he may not, at will or convenience, revert to a position of "owner" under the statute.

We hold that when an owner assumes the role of a general contractor during construction, he is to be considered as such under § 62–601 and not as an owner. The fact that under certain circumstances he may or may not be exempt from obtaining a license (see T.C.A. § 62–602), the exemption does not alter his status under T.C.A. § 62–601 as "general contractor."

From this reasoning the Court of Appeals holds that, because respondent dealt with the "general contractor" and was not engaged in certain excepted pursuits under the statute, he needed no general contractor's license.

■ We reject this reasoning. § 62–601, T.C.A. makes an implicit distinction between a general contractor and an owner. An owner, building on his own premises, and utilizing the service of various persons or entities normally designated as sub-contractors, is not a general contractor and is not required to have a license.

Moreover, this line of reasoning completely overlooks the concluding portion of Sec. 62–601, T.C.A.:

but if the cost of the entire project *exceeds twenty thousand dollars ($20,000),* then any person, firm or corporation engaged in *any part* of the construction such as plumbing, heating, wiring, decorating, painting and so forth, and contracting with the owner or his lessee, agent or representative, shall be treated as a general contractor in his line of work and shall be required to have a license hereunder.

■ Respondent dealt with the owner. There was no general contractor. The cost of the entire project exceeded $20,000.00. It necessarily follows that respondent was "a general contractor in his line of work."

It therefore results that respondent may not recover, his suit being precluded by his failure to have the required general contractor's license.

That this construction may be harsh under the circumstances does not alter the rule that has long obtained in this jurisdiction. In *Farmer, supra,* we quoted with approval from *Stewart v. Hammond,* 78 Wash.2d 216, 471 P.2d 90, 92 (1970) as follows:

> The statute was designed for protection of the public. The overriding public policy must not be defeated by an attempt to accommodate one who has violated its specific provisions, albeit unwittingly. The law will be nullified if noncomplying contractors are permitted to evade the statute by a claim of "unwitting violation" or "undue loss" or by a claim that the other contracting party will be "unduly enriched". Every noncomplying contractor could raise one or all of the suggested defenses. The remedy for those who find themselves in the position of appellant lies with the legislature. 528 S.W.2d at 542

We reverse and remand to the trial court for further proceedings as indicated by this opinion.

COOPER and HARBISON, JJ., concur.

BROCK, Justice, dissenting.

I most respectfully dissent from the decision of the majority. I do not agree that the decision of this Court in *Farmer v. Farmer,* Tenn., 528 S.W.2d 539 (1975) controls our decision in this case and dictates that we turn the contractor away without remedy; but, if I am wrong about that, I would overrule *Farmer* and its predecessors and allow a recovery by the contractor in this case.

Our statutes require that general contractors be licensed but they do not provide either expressly or by implication that a contractor who has performed valuable services in the faithful performance of his contract shall forfeit the value of those services to the landowner. This forfeiture rule which is invoked and applied by the majority in this case was traced in the *Farmer* opinion back to its origins in the last century and shown to be the product of judges, not the Legislature. In the *Farmer* opinion, this Court stated:

> "We are not unmindful that an injustice may occur where a contractor has faithfully and fully performed his contract and no complaint is made as to his skill or workmanship." 528 S.W.2d at 542.

Again, in the majority Opinion in the instant case, this Court states:

> "That this construction may be harsh under the circumstances does not alter the rule that has long obtained in this jurisdiction."

These statements demonstrate the consciousness of this Court that this rule of forfeiture operates to deny justice to the unlicensed contractor. How then, can the continued recognition and enforcement of this rule be justified? Certainly not in the name of necessity, for the Legislature in 1976 by Chapter 882, Section 21, Public Acts of 1976, now codified as T.C.A., § 62–621, has provided that:

> "Any person who undertakes contracting, as defined in § 62–602, without a license as required by § 62–603 shall be liable to a fine of not less than one thousand dollars ($1,000) nor more than five thousand dollars ($5,000) or imprisonment for three (3) months, or both."

This severe penalty which did not exist when this Court handed down the *Farmer* opinion in 1975 should be punishment enough to deter offenders. Moreover, T.C.A., § 62–623, provides for enforcement of the licensing requirements by injunctive process at the instance of the Contractors Licensing Board.

In my opinion a much more enlightened and equitable policy is that followed by the highest court of New York in *John E. Rosasco Creameries v. Cohen*, 276 N.Y. 274, 11 N.E.2d 908 (1937). The issue in that case was whether an unlicensed milk dealer should be permitted to recover approximately $11,000 as the agreed and reasonable value of milk sold and delivered to certain defendants who were also milk dealers. In that opinion, the court stated:

> "The statute involved does not expressly provide that contracts made by unlicensed milk dealers shall be unenforceable, although it does make a violation of the so-called milk control law a misdemeanor punishable by a fine of not less than $25 nor more than $200 or by imprisonment for not less than one month nor more than six months, or both. In the case at bar, if the contract is declared unenforceable, the effect will be to punish the plaintiff to the extent of a loss of approximately $11,000 and permit the defendants to evade the payment of a legitimate debt. . . .
>
> "We have here a statute which provides milk dealers shall not sell milk unless duly licensed. The statute imposes penalties for its violation by way of fine and imprisonment, but it does not expressly provide that contracts made by milk dealers shall be unenforceable. Nothing in this statute reveals an implied intent to deprive unlicensed dealers of the right to recover the reasonable value of the milk sold by them, and where the wrong committed by the violation of the statute is merely malnum prohibitum, and does not endanger health or morals, such additional punishment should not be imposed unless the legislative intent is expressed or appears by clear implication." 11 N.E.2d at 910.

For the reasons stated, I respectfully dissent. I am authorized to state that Justice FONES joins in this dissent.