John A. TACKETT, d/b/a Farm & Home
Realty & Auction and Stephen
Odum, Appellants,

v.

Jerry W. MULLINS and Ruthie E.
Mullins, Appellees.

Supreme Court of Tennessee,
At Nashville.

March 9, 1981.

H. Donald Holman, Holman & Holman,
Fayetteville, for appellants.

Thomas O. Bagley, Stevens, Bagley &
Stevens, Fayetteville, for appellees.

OPINION

FONES, Justice.

This is a suit to recover a real estate commission of three percent of the sales price of a house and lot. Plaintiffs, John and Mary Tackett, were real estate brokers and partners doing business as Farm and Home Realty and Auction, and Stephen Odum was an affiliated broker employed by that firm. Defendant, Jerry W. Mullins, was "a building contractor engaged in the home building and construction business with offices and sales properties located on Liberty Road, Fayetteville, Lincoln County, Tennessee." His wife was a defendant in the trial court, but the trial judge directed a verdict in her favor; that action was not challenged on appeal.

The trial court found that the listing contract between Odum and Mullins, providing for the payment of a three percent commission for the sale of a house built for sale by Mullins, was entered into on October 7, 1978, and at that time Odum was not properly licensed and therefore could not recover. The Court of Appeals affirmed.

I.

In July, 1978, Odum made application for an affiliated brokers license, which showed that he was sponsored by and would be affiliated with the Tackett real estate bro-

kerage firm. In August he took the required examination.

On September 19, 1978, Odum received through the mail the following communication from Educational Testing Service, Princeton, New Jersey:

CONGRATULATIONS—YOU HAVE PASSED YOUR LICENSE EXAM. THIS NOTICE IS TO BE USED AS A TEMPORARY LICENSE. A BOND IN THE APPROPRIATE AMOUNT MUST BE RECEIVED IN THE TREC OFFICE BEFORE YOUR PERMANENT LICENSE CAN BE MAILED. ASK YOUR BROKER FOR ADVICE. EDUCATIONAL REQUIREMENTS MUST BE COMPLETED WITHIN TWO YEARS OF THIS DATE AND PROOF FILED IN THE TREC OFFICE. REGARDS. DAVID A. STOCKS, DIRECTOR

On the same day a bond meeting the requirements of T.C.A. § 62–1319 was duly executed by Odum and a surety company and filed in the office of the County Court Clerk of Lincoln County. Proof of the filing of the bond was duly sent to the office of the Tennessee Real Estate Commission (TREC), but that office did not issue a permanent license to Odum until November 15, 1978. It was recorded on that date in the County Court Clerk's Office of Lincoln County.

On October 7, 1978, at Odum's solicitation, Mullins agreed to permit Odum to show a house he had built for sale in the Wells Brook Subdivision and to pay a three percent sales commission, with the proviso that he would not agree to a sale that produced less than $62,000 net to him. Mullins was informed that Odum was an affiliate broker with the Tackett real estate sales firm, and it appears that Mullins was well acquainted with the Tacketts. Later that day Odum took his prospects, Richard Gatewood and Gatewood's parents, through the Mullins house. Gatewood liked the house and arranged for his wife to come from out-of-state to see the Mullins proper-

ty a few days later. On that occasion Mary Tackett showed the house to Mrs. Gatewood and also showed her the school, church, medical, and other facilities of the Fayetteville area.

Without further participation by Odum or the Tacketts, a sale of the property was consummated on November 17, 1978, by the execution of a warranty deed by Mullins et ux to Gatewood et ux, for a consideration of $64,000. On November 18, 1978, Odum and John Tackett confronted Mullins and asked if he intended to pay them a three percent commission. He acknowledged that he had made the agreement to pay that commission, but said that two subsequent events had caused him to change his mind: First, that Odum had "lied" to Gatewood by telling him the Tackett firm had a "standing" agreement to sell contractor's houses for a three percent commission; and second, that Mary Tackett had shown Mrs. Gatewood another house in the subdivision.

Plaintiffs contend that Odum was entitled to exercise the full privileges of an affiliate broker under the temporary license upon making and recording bond on the nineteenth of September, pursuant to TREC Regulation 1260–2–03.

Defendant insists that T.C.A. § 62–1320 requires the recording of a "Certificate of License from the Commission" in the County Court Clerk's Office before the exercise of any of the rights and privileges therein conferred; thus, that all real estate activities performed by Odum prior to November 15, 1978, were "prohibited," and that T.C.A. § 62–1308 prevents suit or recovery predicated on such prohibited acts.

The TREC was given the usual state board authority to promulgate rules and regulations necessary and proper for carrying out the provisions of Chapter 13, Title 62, not inconsistent with the laws of this State. T.C.A. § 62–1318 provides that "the commission shall issue to each broker and to each affiliate broker licensee a license and a pocket card in *such form* and size as it shall prescribe." (Emphasis added.)

While the authority of the TREC to provide for temporary licensing under any circumstances is questionable, it is clear that the commission has undertaken to do so in two instances: in the case of successful new applicants and at each annual renewal. The undisputed testimony of John Tackett and the clear inferences that flow therefrom showed that following December 31, in each calendar year, every licensed real estate broker and affiliate broker in this State has only a temporary license in effect, authorized only by TREC Regulation 1260–2–03 while awaiting the receipt and recording of his or her annual renewal license from the commission. John Tackett and one of the affiliate brokers in his office received their 1979 renewal license on January 24, 1979. The regulation provides that brokers and affiliate brokers have a temporary license in effect for that period from December 31 in each year until receipt of the renewal license if (1) a check for the renewal fee has been "received in or deposited by" the Real Estate Commission; (2) their bond has been recorded in the office of the County Court Clerk and proof thereof received by the Real Estate Commission; and (3) a second copy of the bond certification has been stamped on the back of a temporary renewal license and held in the office by the principal broker of the firm. In short, there was no material difference in the status of Odum for the period between September 19, 1978, and November 15, 1978, than that of all brokers and affiliate brokers between December 31 of every year and the receipt and recording of their annual renewals.

The new applicant temporary license exception is ambiguously stated in the regulations as follows:

b. All new applicants and transferees meeting requirements of the Tennessee Real Estate Commission shall be issued a license, typed in the Commission Office for the balance of the current license year.

The communication Odum received from the testing service was obviously not "typed in the Commission Office," but we are entitled to and do infer that it was authorized and its contents authored by the commission. We note that it advised that "Educational requirements must be completed within two years from this date." The statute expressly provides that the educational requirements are to be completed within two years from the date of issuance of the original license. T.C.A. § 62–1316. It is fundamental that the commission's rules and regulations must be in conformity with express provision of statutory law. It follows that the commission has elected to treat the date of notice of passing the examination as the date of issuance of the original license.

However, we agree with the Court of Appeals' conclusion that, aside from the question of the Real Estate Commission's authority to provide for "temporary licensing" or to authorize the testing services communication, the Commission could not nullify the express statutory requirement that a certificate of license be recorded in the office of the County Court Clerk prior to engaging in real estate activities. T.C.A. § 62–1320. We are therefore precluded from holding that Odum was legally licensed as an affiliate broker on October 7, 1978. But we are of the opinion, as was the Court of Appeals, that the facts establish that Odum acted in good faith reliance upon the temporary license and the recording of his bond as authority to proceed as an affiliate broker.

II.

In *Taylor & Sons Plumbing Co., Inc. v. Corondolet Realty Trust, et al.*, 611 S.W.2d 572 (Tenn.1981), released February 2, 1981, at Jackson, Tennessee, we carved out an exception to the strict rule of *Farmer v. Farmer*, 528 S.W.2d 539 (Tenn.1975), and *Santi v. Crabb*, 574 S.W.2d 732 (Tenn.1978), barring unlicensed general contractors from recovery either on the contract or in quantum meruit. In October, 1972, Taylor entered into a sub-contract with W & W Con-

struction Company to perform the plumbing portion of work on a construction project that W & W was building for the property owner, Corondolet Realty Trust. The general contractors license law was amended, effective July 1, 1972, in such manner as to require Taylor to have a general contractor's license to perform a contract of that magnitude, but Taylor did not know that at that time it contracted with W & W or at any time during performance of the work. Taylor acquired a general contractor's license after the complaint was filed. The Court held that Taylor could not perfect a lien against the Corondolet property, but that a recovery in quantum meruit would be allowed against the general contractor W & W. The rationale employed in reaching that result is expressed in the following quote from *Kennoy v. Graves*, 300 S.W.2d 568 at 570 (Ky.App.1957):

> The statute involved, and similar ones, are designed to protect the public from being imposed upon by persons not qualified to render a professional service. The reason for the rule denying enforceability does not exist when persons engaged in the same business or profession are dealing at arms length with each other. In the case before us appellant was in a position to know, and did know, the qualifications of appellee. No reliance was placed upon the existence of a license, as presumptively would be the case if appellee was dealing with the general public.

While Mullins was not licensed or engaged as a real estate broker or affiliate broker, he was engaged in the closely related business of building homes for the market and selling them himself and through brokers, and was in a position to know the qualifications of real estate brokers and the intricacies of real estate agency listings and sales contracts, and to deal at arms length with real estate brokers. It is clear that Odum was as qualified to render the service of an affiliated broker on October 7, 1978, as on November 15, 1978, and that he acted in good faith relying on the temporary license. We think this case falls squarely within the scope of the exception adopted in *Taylor & Sons Plumbing Co., Inc. v. Corondolet Realty Trust, et. al., supra.*

The record contains no evidence of the reasonable value of the service rendered by Odum and must be remanded for a determination of that issue.

The judgment of the Court of Appeals is reversed, and this cause is remanded to the Chancery Court of Lincoln County for the ascertainment of the sum due plaintiffs, in accord with this opinion, and the entry and enforcement of an appropriate judgment. Costs are adjudged against Mullins.

HARBISON, C. J., and COOPER, BROCK and DROWOTA, JJ., concur.