**K.O. CHEDESTER, III,
Plaintiff-Appellee,**

v.

**Curt T. PHILLIPS, Defendant-Appellant.**

Supreme Court of Tennessee,
at Knoxville.

Aug. 16, 1982.

Robert M. Stivers, Jr., Knoxville, for defendant-appellant.

William H. Goddard, Dandridge, for plaintiff-appellee.

OPINION

BROCK, Justice.

The issue on this appeal is whether a licensed contractor who has not recorded such license as required by T.C.A., § 62–601 *et seq.* can recover against a property owner for money allegedly owed pursuant to a construction contract.

In March, 1976, the legislature passed the Contractor's Licensing Act, T.C.A., § 62–601 *et seq.* Several provisions of the Act are applicable to the instant case. T.C.A., § 62–613, provides that "until the license is recorded, the holder thereof shall not exercise any of the rights and privileges therein conferred and that if the license is not recorded within three (3) months of issuance, it shall become invalid." T.C.A., § 62–615, states that "the issuance of a license is evidence that the holder is entitled to all the rights and privileges of a licensed contractor while the license is unrevoked and unexpired." T.C.A., § 62–617, provides that "licenses must be renewed by the last day of the twelfth month after issuance or they shall expire and become invalid."

The following events led to the inception of this suit. On July 22, 1976, the state issued a general contractor's license to the defendant. This certificate was recorded in Knox County on November 9, 1976. In May, 1977, T.C.A., § 62–615, was amended to provide that the issuance of a license evidences those rights and privileges of a licensed contractor provided that the license has been recorded in accordance with T.C.A., § 62–613. On July 22, 1977, the plaintiff property owner, entered into a contract with the defendant contractor to build a custom home for approximately $100,000.00. The nature of the contract is disputed. The defendant contends that the parties entered an agreement for the cost of construction plus a fixed $9,000.00 fee, whereas, the plaintiff asserts that the contract provides for a set price of approximately $95,000.00 plus a $9,000.00 construction fee. Pursuant to T.C.A., § 62–617, the defendant should have renewed his license by July 31, 1977, but the license was not renewed until August 24, 1977. On August

22, 1977, construction began on the home. Because of dissatisfaction with the work performed and some personal disputes between the parties, they agreed that the defendant would cease work on the partially completed home about December 5, 1977.

On May 22, 1978, the plaintiff filed suit complaining of inferior workmanship and requesting an accounting to determine the amount which the plaintiff had overpaid the defendant. The plaintiff alleged that part of the garage floor had fallen and needed to be replaced, a wall was improperly built and had to be buttressed, a window had to be replaced, and the $5,000.00 advance was not properly accounted for. On June 14, 1978, the defendant filed an answer denying liability and filed a counterclaim seeking $7,115.18 for unpaid labor, materials, contractor's fee and damages under the existing contract. Upon learning that the defendant did not comply with the provisions of T.C.A., § 62–617, requiring annual renewal of licenses and T.C.A., § 62–613, requiring that each renewal be recorded, the plaintiff filed a motion for summary judgment. The trial court granted the motion for summary judgment, thereby dismissing the defendant's counterclaim. The trial court awarded the plaintiff $11,429.53 in damages plus costs. The Court of Appeals affirmed. Application for permission to appeal was granted to determine whether the trial court erred in granting the motion for summary judgment.

In *Farmer v. Farmer,* 528 S.W.2d 539 (Tenn.1975) and *Santi v. Crabb,* 574 S.W.2d 732 (Tenn.1978), we held that the lack of a general contractor's license will generally deny access to a court. Both *Farmer* and *Santi* dealt, however, with general contractors who were not licensed, rather than a contractor who has obtained a valid license but has failed to record it. Furthermore, we have since relaxed the strict rule of *Farmer* and *Santi* when denial of access to the courts creates an unjust enrichment or when the policies behind *Farmer* and *Santi* are not applicable.

In *Gene Taylor & Son Plumbing Co. v. Corondolet Realty Trust Co.,* 611 S.W.2d 572 (Tenn.1981), the matter of recovery by unlicensed contractors was reviewed in depth. We observed that the rule announced in *Farmer* and *Santi* is judicially created and designed to further the public policy behind the statute, but is not required by the licensing statute. The statute was designed for protection of the general public from unlicensed and unqualified persons. However, when this policy creates a disproportionate penalty, the general rule cannot stand and the court will be permitted to consider the merits of the case to avoid a forfeiture. Therefore, in *Corondolet,* we permitted recovery under a *quantum meruit* theory. We noted that the legislature enacted an amendment to the Contractor's Licensing Act in which "any person who undertakes contracting, as defined in T.C.A., § 62–602, without a license as required by T.C.A., § 62–603, shall be liable for a fine of not less than one thousand dollars ($1,000.00) nor more than five thousand dollars ($5,000.00) or imprisonment for three (3) months, or both." T.C.A., § 62–621 (Cum.Supp.1980). We interpreted such penalty statutes as providing sufficient protection to the public to render unnecessary the judicially created bar to *quantum meruit.* Since nothing in the statute reveals an implied intent to deprive unlicensed contractors of the right to recover the reasonable value of their services, when the wrong committed by the violation of the statute is merely *malum prohibitum* and does not endanger health or morals, we concluded that such additional punishment should not be imposed unless the legislative intent is clear.

In allowing recovery under a theory of *quantum meruit,* the Court in *Corondolet* did not intend to approve unlawful conduct or enforce an illegal contract, but merely sought to avoid an unjust result. The recovery was limited to the labor and materials expended on the project as shown by clear and convincing proof and did not include any profit. The Court noted that this policy is consistent with the provisions of T.C.A., § 62–603(c), adopted on March 27, 1980, which permits an unlicensed general contractor to recover actual documented ex-

penses upon a showing of clear and convincing proof. Although this statutory provision was not applicable to the facts of *Corondolet,* and is not applicable to the facts in the case at bar, the Court in *Corondolet* noted that its holding was consistent with the legislative intent expressed in the statutory amendment. Therefore, in *Corondolet,* the Court carved out an exception to the harsh rule of *Farmer* and *Santi* which had previously barred unlicensed general contractors from recovery either on the contract or on *quantum meruit.*

By analogy, the analysis of *Corondolet* was adopted by the Court in *Tackett v. Mullins,* 612 S.W.2d 909 (Tenn.1981), in the case of an unlicensed real estate broker.

The recent case of *Coleman v. Anderson,* 620 S.W.2d 77 (Tenn.1981), is similar to the case at bar. In *Coleman,* the Court held that a contractor who had not obtained a license prior to entering into a contract to build a house, but had applied for the license and later obtained the license, was entitled to recover under the contract. The contract between the parties was entered into in the spring of 1975 and the residence was completed later that year. Although the defendants had no objection to the quality of the work performed, the cost exceeded the original estimates of the parties. Upon learning that the contractor did not possess a general contractor's license, Anderson defended the action for the contract balance on the plaintiff's inability to secure access to the court. In distinguishing *Coleman* from *Farmer* and *Santi,* we noted that "this is not a case of a person who had ignored the licensing requirements or undertaken to engage in a licensed business without even a colorable attempt to comply." 620 S.W.2d at 78. Both *Coleman* and *Tackett* presented fact situations in which the contractor was in the process of obtaining a license but had not completed all of the technical steps at the time when the parties had entered into the contract. They had, however, acted in good faith and, under such circumstances, were allowed to recover on a *quantum meruit* theory.

In the present case, the contractor began working on the residence about August 22, 1977, and the renewed license was issued on August 24, 1977. Therefore, the defendant was working with an expired license for two days and the bulk of the work was performed during the three month grace period in which one can record a license. About two weeks after this grace period ended, the defendant ceased working on the job. The license was recorded in June, 1978, one month after the complaint was filed in the case at bar.

In light of the legislature's recent policy announced in T.C.A., § 62–603(c), which allows an unlicensed contractor to recover his documented expenses shown by clear and convincing proof; the existence of T.C.A., § 62–621, providing adequate penalties such as fines or imprisonment for contracting without a license or with an expired license; and the court's recent rulings allowing contractors, under certain circumstances, to recover actual expenses for labor and materials expended, we hold that the Chancellor erred in dismissing the defendant's claim on a motion for summary judgment.

This cause is remanded to the Chancellor for further proceedings in keeping with the opinion of this Court. The Chancellor should hold a full hearing allowing the defendant to prove all his outstanding fees, labor, materials expended, and the plaintiff should have an opportunity to show the damages suffered by the allegedly defective work, the appropriateness of certain repairs, and an accounting should be made with respect to all monies expended. All costs incident to this appeal are taxed to the appellee; all other costs will be fixed by the Chancellor.

HARBISON, C.J., and FONES, COOPER and DROWOTA, JJ., concur.