**Irvin McDANIEL, Plaintiff-Appellee,**

v.

**Sam McCALL, individually and d/b/a McCall Enterprises, Inc., Defendants-Appellants.**

Court of Appeals of Tennessee, Eastern Section.

April 29, 1983.

Rehearing Denied May 16, 1983.

Permission to Appeal Denied by Supreme Court Aug. 1, 1983.

**156**

Jerome Templeton, Knoxville, for defendants-appellants.

David H. Dunaway and Gabriela P. Cacuci of Foglesong, Cruze, Dunaway & Shope, LaFollette, for plaintiff-appellee.

## OPINION

FRANKS, Judge.

The principal issue on appeal is whether plaintiff may properly utilize the courts to recover for mining work performed without first obtaining a permit in accordance with T.C.A., § 59–8–205.[1]

In the summer of 1979, the plaintiff at the direction of Robert Anderson, a mining operator, performed excavation work on lands which Anderson represented as his leasehold. Plaintiff constructed a road into the site and removed the earth covering a

vein of coal but discontinued his activities when a reclamation inspector with the Office of Surface Mining issued a cease and desist order to plaintiff and Anderson.[2]

The defendants held a lease to the excavated area and subsequently mined the coal. Plaintiff then sued defendants on the theory of express or implied contract or unjust enrichment. At the trial, plaintiff testified that after he was required to stop work defendant, Sam McCall, promised to pay plaintiff for the work. Plaintiff further testified the value of his services for the work actually performed was $22,950.00,[3] and that his services benefited defendants in that he constructed a road to the situs of the coal and exposed the vein of coal. McCall disputed this evidence and testified he was held responsible for the reclamation of the damage caused by plaintiff's excavation and incurred additional expenses as a result of plaintiff's activities. The trial judge submitted the issue of damages on the alternative theories of contract or *quantum meruit* to the jury. A verdict in the amount of $12,000.00 was returned by the jury and defendants have appealed.

Plaintiff argues the issue of the illegality of the contract and excavating activity is not properly before this court since the issues were first raised on defendants' motion for a new trial. Defendants' answer raises the defense that plaintiff "committed trespass on certain leased premises of defendant" and, in the motion for a new trial, charged, "all work performed by the Plaintiff was done in violation of the laws of the United States and the State of Tennessee, subjecting the Plaintiff to pains and penalties, and, therefore, not a proper subject to support an action against McCall ...."

Plaintiff correctly notes the general rule that a party cannot raise a new issue or

1. § 59–8–205, in pertinent part, provides:
   ... No operator shall engage in surface mining without having first obtained from the commissioner a permit therefor.

2. The order was issued on the basis of mining *without a permit and violations which would* cause environmental problems including, ac-

cording to the issuing officer, not providing sediment control, improper construction of the haul road and numerous other violations.

3. The amount was calculated on the basis of an hourly rate for the use of his equipment and materials.

present a new line of proof on motion for a new trial which is not within the scope of the pleadings. *Lones v. Blount County Beer Bd.,* 538 S.W.2d 386, 390 (Tenn.1976); *Serv-U-Mart, Inc. v. Sullivan County,* 527 S.W.2d 121 (Tenn.1975). However, the issue of the legality of a contract and its enforcement may be raised on a motion for a new trial. *Cummins v. McCoy,* 22 Tenn. App. 681, 125 S.W.2d 509 (1938).

■ There was material evidence before the trial court of an express contract between the parties; however, as to the issue of *quantum meruit,* the evidentiary requirements were not met. There is no evidence plaintiff had exhausted his remedies against Anderson, with whom he had contracted,[4] *Paschall's, Inc. v. Dozier,* 219 Tenn. 45, 407 S.W.2d 150 (1966), and the actual expenses in the form of labor and materials expended on the project to the enrichment of defendants were not established by clear and convincing proof. *Gene Taylor & Sons Plumbing v. Corondolet Realty,* 611 S.W.2d 572 (Tenn.1981).

■ The issue thus becomes whether the courts will enforce the contract as determined by the jury.

Plaintiff argues he is not an operator within the meaning of operator,[5] as defined by the Tennessee Mineral Surface Mining Law of 1972 and, therefore, was not illegally excavating on defendant's leasehold. The statute provides that once an operator has obtained a permit, each subcontractor need not do so; however, when mining or mine preparation is conducted without a permit, the subcontractor as well as the operator are in violation of the statute. *See Bunch v. Allison,* 596 S.W.2d 814 (Tenn. 1980).

A controlling factor in resolving the issue of whether the failure to obtain the statutory permit precludes enforcement of a contract for performance of the activities that required the permit is the legislative intent behind the enactment. 51 Am.Jur.2d, *Licensing and Permits,* § 63, *et seq. Accord: Chedester v. Phillips,* 640 S.W.2d 207 (Tenn. 1982); *Gene Taylor & Sons Plumbing Co., supra; Santi v. Crabb,* 574 S.W.2d 732 (Tenn.1978); *Farmer v. Farmer,* 528 S.W.2d 539 (Tenn.1975).

The statutory scheme is clearly designed for the protection of the environment and the general public and its health.[6] In order

---

4. Plaintiff and Anderson had no firm agreement for compensation for the services in controversy. Anderson testified:

    *Q.* You knew, I guess, at the time that it would require a permit from the Federal authorities to face up a coal mine, didn't you?
    *A.* Yes, sir.
    *Q.* And you didn't have one?
    *A.* Well, we were just prospecting. I understand you are supposed to have a permit even for prospecting.
    *Q.* But you didn't have one.
    *A.* We were just going to go in and open it up, take a look at it and then cover it back up, is what we intended to do.
    *Q.* Just kinda taking a chance, were you?
    *A.* Yes, sir.

5. "Operator" is defined in T.C.A., § 59–8–202(9) as:

    (9) "Operator" means any person, partnership or corporation engaged in surface mining who removes or intends to remove more than two hundred fifty (250) tons of any mineral from the earth by surface mining within twelve (12) successive calendar months; or who removes overburden for the purpose of determining the location, quality

or quantity of any natural mineral deposit. Any operator who has obtained a permit, and otherwise complied with the provisions of this part may subcontract any part, or all, of the mining of said lands covered by the permit to subcontractors and said subcontractor shall not be considered an "operator" within the meaning of this part.

6. T.C.A., § 59–8–203 provides:

    *Purpose of act.*—The general assembly finds that the unregulated surface mining of minerals can cause soil erosion and landslides, stream pollution, and accumulation and seepage of contaminated water; contributes to floods; impairs the value of land for agricultural or other purposes; affects fish and wildlife and their habitats; counteracts efforts for the conservation of soil, water and other natural resources; impairs the owners' rights in neighboring property; creates fire hazards; and in general creates conditions inimical to life, property and the public welfare so as to require the exercise of the state's police power in the regulation of surface mining. The general assembly further finds that there are wide variations in the circumstances and conditions surrounding

for an operator to obtain a permit, he must furnish certain information, including the identification of the owner, the minerals, identification of the source, the operator's legal right to enter and mine the minerals and evidence of the operator's legal right to surface mine the minerals on the land affected by the permit. T.C.A., § 59–8–205. Compliance with the statutory requirements in this case would have established the true ownership of the mining rights and possibly avoided this dispute.

We conclude that to allow recovery on the basis of plaintiff's testimony that defendant agreed to pay for his mining activities conducted without a permit would approve unlawful conduct proscribed by the legislature as not being in the public's interest. The contract, if enforced, which we decline to do, would allow plaintiff to profit from activities prohibited by the Tennessee Surface Mining Law.[7] Accordingly, we reverse the judgment and remand to the trial court for entry of an order dismissing this action at plaintiff's costs.

PARROTT, P.J., and SANDERS, J., concur.

### ORDER DENYING PETITION FOR REHEARING

Upon consideration of the petition for rehearing filed in this cause, we respectfully deny the petition at petitioner's cost.

/s/ Herschel P. Franks
Herschel P. Franks, J.

/s/ James W. Parrott
James W. Parrott, P.J.

/s/ Clifford E. Sanders
Clifford E. Sanders, J.

and arising out of the surface mining of minerals due primarily to differences in topographical, geological, and soil conditions, by reason of which it is necessary, in order to provide the most effective, beneficial and equitable solution to the problem, that broad discretion be placed in the authority designated to administer and enforce the regulatory provisions enacted by the general assembly. It is the purpose of this part, therefore, to provide for such regulation and control of surface mining so as to minimize its injurious effects.

7. Plaintiff correctly notes the Act does not expressly provide that contracts executed in its violation are illegal and argues the public interest is adequately protected by the penalties for violation set out in T.C.A., § 59–8–222(a) and (c). Our refusal to enforce the contract is in furtherance of the public policy behind the Act for the reasons set forth in this opinion.