IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
AUGUST 29, 2001 Session

# GUY VARNADOE v. SHELTON McGHEE, JR., ET AL.

**Direct Appeal from the Chancery Court for Shelby County**
**No. 98-0667-2; The Honorable Floyd Peete, Jr., Chancellor**

---

**No. W2001-00075-COA-R3-CV - Filed December 27, 2001**

---

This appeal arises from a breach of contract claim brought by the Appellee against the Appellants in the Chancery Court of Shelby County. The trial court entered a consent order, referring the case to a special master. Pursuant to the consent order, the trial court directed the special master to conduct an investigation and report his findings to the trial court. The special master conducted an investigation and submitted his report to the trial court. The special master concluded that the Appellee was entitled to full payment under the contract but that the Appellants were entitled to a set-off. The trial court entered a judgment in the Appellee's favor and gave the Appellants a set-off. The trial court ordered that the fees approved by the special master be divided equally between the Appellants and the Appellee.

The Appellants appeal the entry of a judgment in the Appellee's favor by the Chancery Court of Shelby County. For the reasons stated herein, we affirm in part, reverse in part, and remand to the trial court for further proceedings consistent with this opinion.

**Tenn. R. App. P. 3; Appeal as of Right; Judgment of the Chancery Court Affirmed in Part,
Reversed in Part and Remanded**

ALAN E. HIGHERS, J., delivered the opinion of the court, in which W. FRANK CRAWFORD, P.J., W.S., and HOLLY KIRBY LILLARD, J., joined.

Adam M. Nahmias, Memphis, TN, for Appellants

John D. Horne, Memphis, TN, for Appellee

# OPINION

## I. Facts and Procedural History

On March 23, 1998, the Appellee, Guy Varnadoe ("Mr. Varnadoe"), entered into a written contract with the Appellants, Sandra and Shelton McGhee ("the McGhees"), whereby Mr. Varnadoe agreed to complete a framing project at the McGhees' residence in Memphis, Tennessee. The contract required Mr. Varnadoe to complete the framing project in a "workmanlike manner" and within approximately two weeks, weather permitting, from the date the contract was signed. The contract provided that the McGhees would pay Mr. Varnadoe $12,040.00 to perform the framing project. Mr. Varnadoe did not have a residential contractor's license or a home improvement contractor's license.

Mr. Varnadoe commenced work on the framing project. The McGhees claim that disputes arose between the parties concerning the timeliness and quality of Mr. Varnadoe's work. Mr. Varnadoe claims that he substantially completed the framing project on April 13, 1998. Mr. Varnadoe claims that he was unable to proceed to completion by hanging windows, however, because the windows had not been provided by the McGhees. The McGhees refused to pay Mr. Varnadoe. On April 15, 1998, Mr. Varnadoe served a notice of nonpayment upon the McGhees. On June 11, 1998, Mr. Varnadoe filed a mechanic's and materialmen's lien ("lien") against the McGhees' residence in the Office of the Register of Shelby County.

On July 28, 1998, Mr. Varnadoe filed a complaint against the McGhees in the Chancery Court of Shelby County to enforce the lien as well as for damages for breach of contract. On September 25, 1998, the McGhees filed an answer and counterclaim for breach of contract against Mr. Varnadoe. On July 20, 1999, the McGhees filed a motion to dismiss Mr. Varnadoe's complaint based on his failure to have and maintain a home improvement contractor's license in violation of section 62-37-101 et seq. of the Tennessee Code. On July 21, 1999, Mr. Varnadoe filed an answer to the counterclaim. On December 9, 1999, Mr. Varnadoe filed a response to the motion to dismiss. On February 2, 2000, the trial court denied the motion to dismiss.

On February 28, 2000, the trial court entered a consent order requiring the McGhees to deposit the amount of the disputed lien, $12,436.00, with the court clerk and referring the case to a Special Master. Pursuant to that consent order, the trial court directed the Special Master to conduct an investigation and report his findings to the trial court on the following questions:

1. Did Mr. Varnadoe perform the framing work in accordance with the specifications set forth in the parties' March 23, 1998 contract?
2. Did Mr. Varnadoe perform the framing work contemplated by the contract in a workmanlike manner?
3. Did Mr. Varnadoe complete the framing work contemplated by the contract in a timely manner?

4. If Mr. Varnadoe performed his obligations under the contract, the Special Master shall determine the reasonable value of the work performed by Mr. Varnadoe, his agents, subcontractors, and/or employees.

5. If the Special Master shall find that Mr. Varnadoe failed to perform his obligations set forth in the contract in accordance with specifications, in a good and workmanlike manner, and/or in a timely manner, the Special Master shall set forth with particularity each element of the contract that Mr. Varnadoe failed to perform, as well as the factual basis for each such conclusion.

6. If the Special Master shall find that Mr. Varnadoe failed to perform his obligations set forth in the contract in a good and workmanlike manner, in accordance with its terms and conditions, and/or in a timely manner, the Special Master shall determine the nature and amount of damages that were directly and proximately caused by Mr. Varnadoe.

On June 26, 2000, the Special Master submitted his report to the trial court. In conducting his investigation, the Special Master met with the parties, inspected the property, consulted with two general contractors, and reviewed the court pleadings, the potential evidence, and the records pertaining to this case. The Special Master found that Mr. Varnadoe performed the framing work in a workmanlike manner, in a timely manner, and in accordance with the specifications set forth in the contract. The Special Master also found that there was no evidence of any damages caused by Mr. Varnadoe. The Special Master concluded that Mr. Varnadoe was entitled to full payment under the terms of the contract in the amount of $12,040.00. The Special Master also concluded that the McGhees were entitled to a set-off for the costs of installing windows and the performance of certain punch list and related remedial work items. The Special Master limited his findings to the specific questions submitted by the trial court. No exceptions were filed to the Special Master's report.

On July 11, 2000, Mr. Varnadoe filed a motion to confirm the Special Master's report, to award costs, and to enter judgment. On July 20, 2000, the McGhees filed an opposition to the motion to confirm. On July 26, 2000, Mr. Varnadoe filed his affidavit and his attorney's affidavit in rebuttal to the opposition to the motion to confirm. On July 28, 2000, the trial court held a hearing on the motion to confirm. On October 19, 2000, the trial court entered a judgment in favor of Mr. Varnadoe in the amount of $10,890.00 after giving the McGhees a set-off of $1,150.00. The trial court denied Mr. Varnadoe's request for discretionary costs and ordered that the fees approved by the Special Master be divided equally between Mr. Varnadoe and the McGhees. On November 14, 2000, the McGhees filed a motion to alter or amend judgment. On November 16, 2000, Mr. Varnadoe filed an opposition to the motion to alter or amend judgment. On December 14, 2000, the trial court denied the motion to alter or amend judgment. This appeal followed.

## II. Standard of Review

The trial court's referral of matters to a special master affects this Court's standard of review on appeal. See Archer v. Archer, 907 S.W.2d 412, 415 (Tenn. Ct. App. 1995). A concurrent finding of fact by a special master and a trial court "is conclusive on appeal, except where the finding is on an issue not appropriate for referral, where it is based on an error of law or a mixed question of fact and law, or where the factual finding is not based on material evidence." Aussenberg v. Kramer, 944

S.W.2d 367, 370 (Tenn. Ct. App. 1996) (citing <u>Archer</u>, 907 S.W.2d at 415); <u>see also</u> TENN. CODE ANN. § 27-1-113 (2000) (stating that "the court of appeals shall not have the right to disturb such [concurrent] finding" of the special master and the chancellor). If there is any material evidence to support the trial court's concurrent finding, the trial court's finding must be affirmed. <u>See id.</u>

### III. Law and Analysis

The following issues are presented for our review:

1. Whether this Court is bound by the findings of fact made by the Special Master and confirmed by the trial court when the McGhees filed no exceptions to those findings and submitted no transcript of evidence produced;
2. Whether the trial court erred by failing to consider Mr. Varnadoe's failure to have and maintain a home improvement contractors license;
3. Whether there was sufficient material evidence to support the Special Master's conclusion that Mr. Varnadoe was entitled to payment in full for the labor and services he provided to the McGhees;
4. Whether the trial court erred by assessing fees awarded to the Special Master one-half to Mr. Varnadoe and one-half to the McGhees; and
5. Whether Mr. Varnadoe is entitled to recover damages from the McGhees for frivolous appeal.
We will examine each issue in turn.

The first issue presented for our review is whether this Court is bound by the findings of fact made by the Special Master and confirmed by the trial court when the McGhees filed no exceptions to those findings and submitted no transcript of evidence produced. Rule 53.04(1) of the Tennessee Rules of Civil Procedure states that a master shall prepare a report and file the report with the clerk of the court who then mails to all parties notice of the filing of the report. <u>See</u> TENN. R. CIV. P. 53.04(1). Rule 53.04(2) of the Tennessee Rules of Civil Procedure states that "[w]ithin ten (10) days after being served with notice of the filing of the report, any party may serve written objections thereto upon the other parties." TENN. R. CIV. P. 53.04(2). An appellant waives an issue for purposes of appellate review when he fails to make the appropriate objection at the trial court level. <u>See</u> <u>Barnhill v. Barnhill</u>, 826 S.W.2d 443, 458 (Tenn. Ct. App. 1991). Thus, the failure to serve written objections to a master's report within ten days constitutes a waiver of any objection to a master's report on appeal. The record fails to reflect that the McGhees formally objected to the Special Master's report as permitted by Rule 53.04(2). Accordingly, we find that the McGhees have waived any issues for appellate review concerning the factual findings within the Special Master's report.

The second issue presented for our review is whether the trial court erred by failing to consider the legal issue of Mr. Varnadoe's failure to have and maintain a home improvement contractor's license. The McGhees argue that the trial court failed to adequately consider the effect of Mr. Varnadoe's failure to have and maintain a home improvement contractor's license when confirming the Special Master's report and entering judgment in favor of Mr. Varnadoe. Mr. Varnadoe argues that the trial court did adequately consider the McGhees' argument as evidenced by the trial court's denial of the McGhees' motion to dismiss Mr. Varnadoe's complaint where the motion to dismiss was

based on Mr. Varnadoe's failure to have and maintain a home improvement contractor's license in violation of section 62-37-101 et seq. of the Tennessee Code.

Section 62-6-101 et seq. of the Tennessee Code ("the Contractors Licensing Act") covers licensing requirements of general contractors. Section 62-6-101(3)(A) defines a contractor, in pertinent part, as

> any person or entity who undertakes to, attempts to, or submits a price or bid or offers to construct, supervise, superintend, oversee, schedule, direct, or in any manner assume charge of the construction, alteration, repair, improvement, movement, demolition, putting up, tearing down, or furnishing labor to install material or equipment for any building, highway, road, railroad, sewer, grading, excavation, pipeline, public utility structure, project development, housing, housing development, improvement, or any other construction undertaking for which the total cost of the same is twenty-five thousand dollars ($25,000) or more.

TENN. CODE ANN. § 62-6-102(3)(A) (1997).

Section 62-6-103(a) requires any person engaged in contracting to submit evidence of his or her qualification to engage in contracting and to be licensed. See TENN. CODE ANN. § 62-6-103(a) (1997). Section 62-6-120 states that any person who engages in contracting without a license commits a Class A misdemeanor. See TENN. CODE ANN. § 62-6-120 (1997). Section 62-6-103(b) permits an unlicensed contractor "to recover actual documented expenses only upon a showing of clear and convincing proof" in a court of equity. TENN. CODE ANN. § 62-6-103(b) (1997).

Section 62-37-101 et seq. of the Tennessee Code ("the Home Improvement Licensing Act") covers licensing requirements of home improvement contractors. Section 62-37-103(7) defines a home improvement contract as "an agreement between a contractor and an owner for the performance of home improvement, and includes all labor, services and materials to be furnished and performed thereunder." TENN. CODE ANN. § 62-37-103(7) (1997). Section 62-37-103(6)(A) defines home improvement as

> the repair, replacement, remodeling, alteration, conversion, modernization, improvement, or addition to any land or building, or that portion thereof which is used or designed to be used as a residence or dwelling unit for one (1), two (2), three (3), or four (4) dwelling units, and includes the construction, replacement, or improvement of driveways, swimming pools, porches, garages, landscaping, fences, fall-out shelters, roofing, painting, and other improvements to structures or upon land which is adjacent to a dwelling house for one (1), two (2), three (3), or four (4) dwelling

-5-

units. Without regard to the extent of affixation, 'home improvement'
includes the installation of central heating or air-conditioning systems,
storm windows or awnings;

TENN. CODE ANN. § 62-37-103(6)(A) (1997).

Section 62-37-103(6)(B) states, in pertinent part, that home improvement does not include "[t]he construction of a new home building or work done by a contractor in compliance with a guarantee of completion of a new building project." TENN. CODE ANN. § 62-37-103(6)(B) (1997). Section 62-37-104(b) requires any person engaged in a home improvement business to first obtain a license. See TENN. CODE ANN. § 62-37-104(b) (1997). The legislative purpose in enacting the Home Improvement Licensing Act was "to safeguard and protect the homeowner against abuses by home improvement contractors through regulating the home improvement business and by the licensing of persons engaged in such business." TENN. CODE ANN. § 62-37-102 (1997). Section 62-37-114 states that any person who procures a home improvement contract without a license commits a Class A misdemeanor. See TENN. CODE ANN. § 62-37-114 (1997).

In the case at bar, Mr. Varnadoe argues that the construction project for which he was contracted to perform framing was of such magnitude that it was "new construction" covered by the Contractors Licensing Act rather than "home improvement" covered by the Home Improvement Licensing Act. Mr. Varnadoe then argues that he was not required to be licensed under the Contractors Licensing Act because the contract did not exceed $25,000.00. We agree that, had the Contractors Licensing Act been applicable to the case at bar, Mr. Varnadoe would not be required to be licensed because the contract did not exceed $25,000.00. We disagree, however, with Mr. Varnadoe's argument that the Home Improvement Licensing Act is not applicable to the case at bar. The Home Improvement Licensing Act defines home improvement as an addition to any land or building. The parties' contract states that Mr. Varnadoe agreed to "frame an addition on the home of Mr. and Mrs. McGhee." Because the Home Improvement Licensing Act defines home improvement as an addition to any building and the contract in the case at bar concerns a framing project of an addition to a building, this contract and the failure of Mr. Varnadoe to obtain a license falls squarely within the Home Improvement Licensing Act.

We must determine whether an unlicensed home improvement contractor is entitled to recover on the contract. Unlike the Contractors Licensing Act, the Home Improvement Licensing Act does not address the recovery of an unlicensed home improvement contractor. The Contractors Licensing Act permits an unlicensed general contractor to recover his actual documented expenses upon a showing of clear and convincing proof. Both the Home Improvement Licensing Act and the Contractors Licensing Act are penalty statutes in that they state that any person engaged in contracting commits a Class A misdemeanor for failure to have a license. As such, we find the following analysis by the Tennessee Supreme Court construing the Contractors Licensing Act analogous to cases involving the Home Improvement Licensing Act:

The statute was designed for protection of the general public from

-6-

unlicensed and unqualified persons. However, when this policy creates a disproportionate penalty, the general rule cannot stand and the court will be permitted to consider the merits of the case to avoid a forfeiture. Therefore, in *Carondolet*, we permitted recovery under a *quantum meruit* theory. . . . We interpreted such penalty statutes as providing sufficient protection to the public to render unnecessary the judicially created bar to *quantum meruit*. Since nothing in the statute reveals an implied intent to deprive unlicensed contractors of the right to recover the reasonable value of their services, when the wrong committed by the violation of the statute is merely *malum prohibitum* and does not endanger health or morals, we concluded that additional punishment should not be imposed unless the legislative intent is clear.

Chedester v. Phillips, 640 S.W.2d 207, 208 (Tenn. 1982) (citing Gene Taylor & Sons Plumbing Co., Inc. v. Carondolet Realty Trust, 611 S.W.2d 572 (Tenn. 1981).

While we are not concerned with an unlicensed general contractor in this case but, rather, an unlicensed home improvement contractor, the parallel between the two is clear. The application of quantum meruit in the case at bar would prevent the McGhees from reaping an unfair windfall and would not harm the legislative intent of the Home Improvement Licensing Act. To prevent Mr. Varnadoe from recovering his actual documented expenses expended on the framing project would result in additional punishment to Mr. Varnadoe for his failure to have a license. There is no clear legislative intent behind the Home Improvement Licensing Act to impose additional punishment upon an unlicensed home improvement contractor. Accordingly, we find that Mr. Varnadoe is permitted to recover under quantum meruit limited to the actual documented expenses expended on the framing project as shown by clear and convincing proof. We reverse the trial court's judgment permitting Mr. Varnadoe to recover on the contract and remand this issue to the trial court for a determination of the actual documented expenses incurred by Mr. Varnadoe.

The third issue presented for our review is whether there was sufficient material evidence to support the Special Master's conclusion that Mr. Varnadoe was entitled to payment in full for the labor and services he provided to the McGhees. This issue is pretermitted by the resolution of the previous two issues. Accordingly, we decline to address this issue on appeal.

The fourth issue presented for our review is whether the trial court erred by assessing fees awarded to the Special Master one-half to Mr. Varnadoe and one-half to the McGhees. Rule 53.01 of the Tennessee Rules of Civil Procedure states, "The compensation to be allowed to a master shall be fixed by the court, and shall be charged upon such of the parties or paid out of any fund or subject matter of the action, which is in the custody and control of the court as the court may direct." TENN. R. CIV. P. 53.01. The trial court's decision to assess fees to a party under Rule 53.01 is reviewed under an abuse of discretion standard. See Nguyen v. Hart, 1993 WL 291411, at *4 (Tenn. Ct. App. July 29, 1993). We find no evidence of an abuse of discretion by the trial court. Accordingly, we

affirm the trial court's assessment of fees awarded to the Special Master one-half to Mr. Varnadoe and one-half to the McGhees.

The final issue presented for our review is whether Mr. Varnadoe is entitled to recover damages from the McGhees for frivolous appeal. Tennessee law permits any reviewing court to award damages for frivolous appeal:

> When it appears to any reviewing court that the appeal from any court of record was frivolous or taken solely for delay, the court may, either upon motion of a party or of its own motion, award just damages against the appellant, which may include, but need not be limited to, costs, interest on the judgment, and expenses incurred by the appellee as a result of the appeal.

TENN. CODE ANN. § 27-1-122 (2000).

A frivolous appeal is one that is devoid of merit or has no reasonable chance of succeeding. See Combustion Eng'g, Inc. v. Kennedy, 562 S.W.2d 202, 205 (Tenn. 1978); Davis v. Gulf Ins. Group, 546 S.W.2d 583, 586 (Tenn. 1977); Jackson v. Aldridge, 6 S.W.3d 501, 504 (Tenn. Ct. App. 1999); Industrial Dev. Bd. v. Hancock, 901 S.W.2d 382, 385 (Tenn. Ct. App. 1995). Determining whether to award damages based on a frivolous appeal is a discretionary decision. See Banks v. St. Francis Hosp., 697 S.W.2d 340, 343 (Tenn. 1985).

Mr. Varnadoe argues that this Court should award damages because the McGhees' appeal is frivolous. We do not deem this to be an appropriate case for imposition of sanctions for a frivolous appeal and, therefore, respectfully deny Mr. Varnadoe's request in this regard.

## IV. Conclusion

For the foregoing reasons, the decision of the trial court is affirmed in part, reversed in part, and remanded for further proceedings consistent with this opinion. Costs of this appeal are taxed equally against the Appellants, Sandra and Shelton McGhee, and their surety, and the Appellee, Guy Varnadoe, for which execution may issue if necessary.

_____
ALAN E. HIGHERS, JUDGE