**GENE TAYLOR & SONS PLUMBING CO., INC., Plaintiff-Appellant,**

v.

**CORONDOLET REALTY TRUST, W & W Construction Company, A Partnership Composed of William W. Watts and Harlan C. Watts, and James P. Gates, Trustee for Tri-South Mortgage Investors, Defendants-Appellees.**

Supreme Court of Tennessee.

Feb. 2, 1981.

Lloyd C. Kirkland, Jr., Memphis, for plaintiff-appellant.

Al H. Thomas, Memphis, Robert J. Ames, Nashville, for defendants-appellees.

## OPINION

DROWOTA, Justice.

### I.

The issue in this case is whether a subcontractor not licensed under T.C.A. § 62–601 et seq. can recover against a licensed general contractor and a property owner under a subcontract agreement.

The subcontractor, Gene Taylor & Sons Plumbing Co., Inc., filed a complaint to enforce a mechanic's lien in the Chancery Court of Shelby County against Corondolet Realty Trust, property owner, W & W Construction Co., general contractor, and James P. Gates, trustee under a deed of trust on the real estate securing an indebtedness to Tri-South Mortgage Investors. The Chancellor dismissed the case with prejudice on the authority of *Farmer v. Farmer*, 528 S.W.2d 539 (Tenn.1975). The Court of Appeals affirmed citing *Santi v. Crabb*, 574 S.W.2d 732 (Tenn.1978) as additional controlling authority.

The pertinent facts are set forth in an agreed stipulation which was incorporated by the Chancellor in his final decree, as follows:

1. Plaintiff is a Tennessee Corporation engaged in the plumbing business with its principal offices in Shelby County, Tennessee, and was at the time of performing the contract in question duly and properly licensed to engage in the plumbing business.

2. Corondolet Realty Trust was the owner of a certain tract of real property located in Shelby County, Tennessee on which a townhouse development known as the "Glenn Townhouses" has been constructed, said property being known as 6071 Summer Avenue.

3. James P. Gates was named as Trustee under Trust Deed No. H2 6071 securing indebtedness to Tri-South Mortgage Investors.

4. W & W Construction Company is a partnership composed of William W. Watts and Harlan C. Watts with its principal offices in Memphis, Shelby County, Tennessee. Said Defendant entered into a contract with Corondolet Realty Trust to construct apartments known as "The Glenn Townhouses"; Defendant is a licensed general contractor.

5. Defendant W & W Construction Company contracted with the Plaintiff to perform certain plumbing work in the construction of said townhouse development and agreed to pay Plaintiff the sum of $178,493.34 for said plumbing work pursuant to the sub-contract dated October 31, 1972 marked Exhibit A to the Complaint.

6. Plaintiff was also authorized by Defendant, W & W Construction Company by contract change order dated November 8, 1972 to add an additional $2,760.00 for a City of Memphis sewer tap fee pursuant to said change order marked Exhibit B attached to the Complaint.

7. Plaintiff has been paid by Defendant, W & W Construction Company a total of $162,362.22, leaving a balance due of $18,891.12 on the original contract as amended. Defendant, W & W Construction Company admits owing this balance in its answer, but takes the position that Plaintiff is barred from recovering any amount whatsoever because Plaintiff did not have [a] general contractor's license at the time the contract was entered into and the work performed.

8. Plaintiff did not possess a general contractor's license at the time that Plaintiff entered into the contract with Defendant W & W Construction Company in October, 1972 nor at any time during the time that it did the work.

9. Plaintiff was requested by Defendant to do some extra work on the project for which Plaintiff claims it is owed $7,172.90. Defendant denies that it owes any such amount because Plaintiff is barred from collecting due to the fact that Plaintiff did not have a general contractor's license and also because Defendant claims that it is entitled to offsets and backcharges which would offset the amount of extras claimed by the Plaintiff.

10. Within 90 days after the completion of the townhouses Plaintiff notified all Defendants that it claimed a lien on said property and within said 90 day period filed with the County Register of Shelby County, Tennessee a sworn statement of notice of lien which is attached as Exhibit C to the Complaint. A second notice was filed and is attached as Exhibit D to the Complaint.

11. Prior to April, 1972 Plaintiff was not required to have general contractor's license. Section 62–601, et seq., T.C.A. was amended by Chapter 633 of the Public Acts of 1972 in April of 1972, to be effective July 1, 1972, in such manner as to require the Plaintiff to have a general contractor's license in order to enter into a contract of the magnitude involved in this matter. At the time of entering into said contract in October, 1972 Plaintiff was not aware that a general contractor's license was required of it, nor was Plaintiff aware of said requirement at anytime during the performance of its contract. Plaintiff now has a general contractor's license which was acquired after the Complaint was filed in this cause.

At all times material to this litigation Sections 62–601 and 62–602 of *Tennessee Code Annotated* provided as follows:

62–601. CONTRACTORS SUBJECT TO PROVISIONS.—For the purpose of this chapter, the term "general contractor" is defined as any person, firm or corporation who, for a fixed price, fee, commission, or gain of whatever nature, undertakes to construct, erect, alter or repair, or have constructed, erected, altered or repaired, under his, their or its supervision, buildings, structures, and private works and utilities of every nature or character whatsoever, including railroads, municipal works, water supply systems, sewerage and drainage systems, levees, locks and dams, canals, industrial works, and any highways, roads, bridges, or similar structures or projects where the cost of the completed structure or improvement, or of different structures and improvements under the same contract, exceeds twenty thousand dollars ($20,000.00). However, the term "general contractor" shall not include subcontractors, firms or corporations not in privity with the owner of the property being improved, or his lessee, agent or representative, except *subcontractors engaged in doing* electrical work, *plumbing work,* heating, ventilating and air conditioning work, *each of whom shall be required to have a license hereunder with limits not less than the amount of the contract between such subcontractor and the general contractor where such subcontract sum is in excess of twenty thousand dollars ($20,000.00)*; but if the cost of the entire project exceeds twenty thousand dollars ($20,000.00), then any person, firm or corporation engaged in any part of the construction such as plumbing, heating, wiring, decorating, painting and so forth, and contracting with the original owner or his lessee, agent or representative, shall be treated as general contractor in his line of work and shall be required to have a license hereunder. (emphasis added)

62–602. QUALIFICATION–LICENSE REQUIRED.—Any person, firm or corporation engaged in general contracting in this state shall be required to submit evidence that he is qualified to engage in general contracting, and shall be licensed as hereinafter provided; *and it shall be unlawful for any person, firm or corporation to engage in or offer to engage in general contracting in the state, unless such person, firm or corporation has been duly licensed under the provisions of this chapter, as hereinafter provided.* (emphasis added)

.    .    .    .    .

## II.

In *Farmer v. Farmer, supra,* an unlicensed general contractor agreed to build a dwelling for the defendant homeowners. The homeowners agreed to pay the contractor the cost of construction plus 10% profit. The homeowners made certain payments

and the contractor completed the house. The homeowners, however, refused to pay the full contract price, leaving $4,561.98 for labor and materials plus the 10% profit owing. The contractor sued and the Chancellor granted recovery limited to the unreimbursed cost of labor and materials on a theory of quantum meruit. This Court reversed, holding that when the statute required a contractor to be licensed, an unlicensed contractor was barred from suing either on the contract or in quantum meruit. In so doing, the Court adopted the following language found in *Stewart v. Hammond*, 78 Wash.2d 216, 471 P.2d 90, 92 (1970):

> The statute was designed for protection of the public. The overriding public policy must not be defeated by an attempt to accommodate one who has violated its specific provisions, albeit unwittingly. The law will be nullified if noncomplying contractors are permitted to evade the statute by a claim of "unwitting violation" or "undue loss" or by a claim that the other contracting party will be "unduly enriched". Every noncomplying contractor could raise one or all of the suggested defenses. The remedy for those who find themselves in the position of appellant lies with the legislature.

528 S.W.2d at 542.

*Santi v. Crabb, supra,* involved a virtually identical fact situation. In that case, the homeowner acted as his own general contractor and made an agreement with the plaintiff under which the plaintiff was to perform certain sheetrock work. The plaintiff was not licensed as a general contractor in his line of work as required by T.C.A. § 62–601. The plaintiff subsequently sued the homeowner for the value of his services, but this Court denied recovery on the authority of *Farmer v. Farmer.*

In *Farmer* and in *Santi,* this Court has recognized the general rule regarding the effect of noncompliance with licensing statutes on the enforceability of contracts. Yet this rule is neither explicitly nor implicitly required by the licensing statute. The rule is a judicial creation designed to fur-

ther the public policy behind the statute. As such, the general rule need not be applied inflexibly without regard to the facts in a particular case. A leading authority on the law of contracts has stated:

> Where it is clear that the statute requires the license ... the courts usually ... hold that bargains made in breach of the law are not enforceable by the wrongdoer. This accords with sound policy except when it operates with disproportionate severity .... In general, the nonenforceability of (such) bargains will have a salutary effect in causing obedience to the licensing statute. Therefore, the general rule will no doubt continue to be maintained as the "general" rule, while still permitting the court to consider the merits of the particular case and to avoid unreasonable penalties and forfeitures.

> .     .     .     .     .

> Although many courts yearn for a mechanically applicable rule, they have not made one in the present instance. Justice requires that the penalty should fit the crime; and justice and sound policy do not always require the enforcement of licensing statutes by large forfeitures going not to the state but repudiating defendants.

6A A. Corbin, Contracts § 1512 at 713, 716 (1962) (cited with approval in *Farmer v. Farmer, supra* at 542.) In the instant case, the appellant contends that the particular facts justify this Court in permitting recovery under a theory of quantum meruit. With regard to the cause of action against the appellee W & W Construction Co., we agree.

In both *Farmer* and *Santi,* the unlicensed contractors were suing the owner of the property where the work was to be done. In the instant case, the appellant contracted with and brought suit against a construction company licensed as a general contractor. Other courts have recognized that the policies that bar recovery against a member of the general public do not apply in suits against licensed professionals in the

same business. *Fillmore Products, Inc. v. Western States Paving, Inc.*, 561 P.2d 687 (Utah 1977); *Dow v. U. S.*, 154 F.2d 707 (10th Cir. 1946), and cases there cited. As stated in *Kennoy v. Graves*, 300 S.W.2d 568 (Ky.App.1957):

> The statute involved, and similar ones, are designed to protect the public from being imposed upon by persons not qualified to render a professional service. The reason for the rule denying enforceability does not exist when persons engaged in the same business or profession are dealing at arms length with each other. In the case before us appellant was in a position to know, and did know, the qualifications of appellee. No reliance was placed upon the existence of a license, as presumptively would be the case if appellee was dealing with the general public. *Id.* at 570.

We adopt this language and refuse to permit W & W Construction Co. to raise the rule of *Farmer* as a bar to recovery under a theory of quantum meruit.

The appellees Corondolet and Gates, appearing respectively as owner and trustee of the property on which appellant holds a lien, are among the class of persons the licensing statute was designed to protect. They occupy the same position as the defendants in *Farmer* and *Santi* when this Court barred recovery under quantum meruit. Absent other considerations that might justify a departure from the rule in *Farmer*, they are entitled to raise the failure of the appellant to obtain a license as a defense to a suit in quantum meruit.

In *Farmer*, we recognized that even when a defendant is in the protected class, application of the general rule might result in an injustice "where a contractor has faithfully and fully performed his contract and no complaint is made to his skill or workmanship." 528 S.W.2d at 542. We are also aware that the amount of the "penalty" has no relation to the conduct it penalizes, but instead is determined in a fortuitous manner by the amount owing when the defendant ceases to make payments according to the agreed terms of the contract. Yet these considerations are not enough to warrant a departure from *Farmer* for defendants in the protected class. As the court there stated, the remedy for this injustice "lies with the legislature." *Id.*

*Farmer v. Farmer* was decided on September 22, 1975. At their next regular session, the General Assembly enacted Chapter 822, § 21, Public Acts of 1976, now codified at T.C.A. § 62–621 (Cum.Supp. 1980). In pertinent part, it provides:

> Any person who undertakes contracting, as defined in § 62–602, without a license as required by § 62–603 shall be liable to a fine of not less than one thousand dollars ($1,000) nor more than five thousand dollars ($5,000) or imprisonment for three (3) months, or both.

Courts in other jurisdictions have interpreted similar penalty statutes as providing sufficient protection to the public to render unnecessary the judicially created bar to quantum meruit. *See, e. g., Wilson v. Kealakekua Ranch, Ltd.*, 57 Haw. 124, 551 P.2d 525 (1976); *Hiram Ricker & Sons v. Students International Meditation Society*, 342 A.2d 262 (Me.1975), *appeal dismissed*, 423 U.S. 1042, 96 S.Ct. 764, 46 L.Ed.2d 631 (1976); *Town Plan & Eng. Assoc., Inc. v. Amesbury Spec. Co., Inc.*, 369 Mass. 737, 342 N.E.2d 706 (1976). In *John E. Rosasco Creameries v. Cohen*, 276 N.Y. 274, 11 N.E.2d 908 (1937), an unlicensed milk dealer sought to recover the value, approximately $11,000.00, of milk sold and delivered to certain defendant milk dealers. The New York Court of Appeals stated:

> The statute involved does not expressly provide that contracts made by unlicensed milk dealers shall be unenforceable, although it does make a violation of the so-called milk control law a misdemeanor punishable by a fine of not less than $25 nor more than $200 or by imprisonment for not less than one month nor more than six months, or both. In the case at bar, if the contract is declared unenforceable, the effect will be to punish the plaintiff to the extent of a loss of approximately $11,000 and permit the defendants to evade the payment of a legitimate debt. . . .

We have here a statute which provides milk dealers shall not sell milk unless duly licensed. The statute imposes penalties for its violation by way of fine and imprisonment, but it does not expressly provide that contracts made by milk dealers shall be unenforceable. Nothing in this statute reveals an implied intent to deprive unlicensed dealers of the right to recover the reasonable value of the milk sold by them, and where the wrong committed by the violation of the statute is merely malum prohibition, and does not endanger health or morals, such additional punishment should not be imposed unless the legislative intent is expressed or appears by clear implication.

11 N.E.2d at 910.

In the instant case, however, all events material to the appellant's cause of action occurred prior to March 29, 1976, the effective date of T.C.A. § 62–621. For this reason, we hold that the Court of Appeals properly barred the appellant from enforcing its lien against the appellees Corondolet and Gates.

### III.

In permitting recovery against W & W Construction Co. under a theory of quantum meruit, we do not intend to approve unlawful conduct or to enforce an illegal contract. The application of the *Farmer* rule is unjust only with regard to the aspect of forfeiture when forfeiture is required neither by the licensing statute nor by the policy underlying that statute. In short, we merely avoid "unreasonable penalties and forfeitures." *Corbin*, supra, at 716.

Any recovery the appellant might have against W & W Construction Co. should be limited to actual expenses in the form of labor and materials expended on the project as shown by clear and convincing proof. These expenses should not include any amounts which constitute profit under the contract. In all events, recovery

should be limited by the contract price unless the appellant can show by clear and convincing proof that labor and materials were expended in addition to that required by the contract.[1]

The stipulated facts state the amount owed the appellant under the contract. There is, however, no finding as to the amount to which the appellant is entitled under the measure of recovery we have just stated. The parties also disagree on the sum due the appellant for certain extra work. These issues should be resolved in further proceedings before the Chancellor.

The decision of the Court of Appeals is affirmed in part and reversed in part. This cause is remanded to the Chancellor for further proceedings in keeping with the opinion of this Court.

Affirmed in part; reversed in part; and remanded.

BROCK, C. J., and FONES, COOPER, and HARBISON, JJ., concur.

---

1. T.C.A. § 62–603(c) permits an unlicensed general contractor to recover actual documented expenses upon a showing of clear and convincing proof. Although this statute is inapplicable to the instant case, since it did not become effective until March 27, 1980, our holding with regard to the measure of recovery is consistent with the legislative intent expressed therein.