# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE

CUSTOM BUILT HOMES,    )
)
    Plaintiff/Counter-Defendant/    )
    Appellee,    )
)    Williamson Circuit
)    No. 94208
VS.    )
)    Appeal No.
)    01A01-9511-CV-00513
G. S. HINSEN COMPANY, INC.,    )
)
    Defendant/Counter-Plaintiff/    )
    Appellant.    )

APPEAL FROM THE CIRCUIT COURT FOR WILLIAMSON COUNTY
AT FRANKLIN, TENNESSEE

THE HONORABLE HENRY DENMARK BELL, JUDGE

For the Plaintiff/Appellee:

Robert H. Plummer, Jr.
Franklin, Tennessee

For the Defendant/Appellant:

Phillip B. Jones
EVANS, JONES & REYNOLDS
Nashville, Tennessee

## AFFIRMED AND REMANDED

WILLIAM C. KOCH, JR., JUDGE

# O P I N I O N

This appeal arises out of a dispute over the workmanship of residential renovations. The interior designer hired by the owner to undertake the renovations withheld final payment to the contractor who performed the work because the owner was dissatisfied with the renovations. After the contractor obtained a judgment against the interior designer in the Williamson County General Sessions Court, the interior designer perfected an appeal to the Circuit Court for Williamson County and filed a counterclaim against the contractor. Following a bench trial, the trial court dismissed the interior designer's claims against the contractor and entered a judgment against the interior designer for the remaining balance of the construction contract. The interior designer has appealed. While the trial court erroneously concluded that the Contractor's Licensing Act of 1976 prevented the interior designer from pursuing its claims against the contractor, we have concluded that the trial court reached the proper result. Accordingly, we affirm the judgment.

## I.

In the spring of 1992, Dan Clark decided to renovate his home in Leipers Fork. He retained G. S. Hinsen Company, Inc., a Nashville interior design firm, to undertake and complete the renovations. Under its verbal agreement with Mr. Clark, G. S. Hinsen agreed to hire and superintend one or more contractors to perform the work on Mr. Clark's home.

G. S. Hinsen sought a quote for the work from Custom Built Homes, and in May 1992 Custom Built Homes submitted a proposal to G. S. Hinsen stating that it would perform the specified renovations to Mr. Clark's home for $8,687. G. S. Hinsen accepted the proposal and accordingly entered into a contract with Custom Built Homes for the work. After Custom Built Homes started the work, Mr. Clark decided to expand the scope of the project to include the construction of a horse barn and the extension of an existing fence. In September 1992, Custom Built Homes submitted another proposal to G. S. Hinsen offering to perform the additional work for $31,640. G. S. Hinsen accepted the proposal and accordingly entered into a second contract with Custom Built Homes. Mr. Clark never entered into a contract

with Custom Built Homes; his only contract for these renovations was with G. S. Hinsen.

During the course of the construction, Custom Built Homes periodically submitted requests for progress payments to G. S. Hinsen, and G. S. Hinsen made corresponding payments to Custom Built Homes for the work performed.[1] Before the project was substantially completed, Mr. Clark informed G. S. Hinsen of his dissatisfaction with portions of the work, including the fit and finish of the interior millwork, the fence, and the barn. Custom Built Homes undertook some remedial work on the interior millwork and the fence but disputed the remaining complaints about the quality of its work. Ultimately, G. S. Hinsen declined to pay Custom Built Homes's final $932 bill to induce Custom Built Homes to satisfy Mr. Clark's complaints about the quality of the work.

After Custom Built Homes and G. S. Hinsen were unable to resolve their dispute, Custom Built Homes sued G. S. Hinsen in the Williamson County General Sessions Court seeking to recover $932. G. S. Hinsen, in turn, filed a claim against Custom Built Homes seeking $10,000 (the general session's court's jurisdictional limits at the time) for breach of contract stemming from defective or uncompleted work. The general sessions court awarded Custom Built Homes $832 and dismissed G. S. Hinsen's claim.

G. S. Hinsen perfected an appeal to the Circuit Court for Williamson County where it filed an amended counterclaim against Custom Built Homes for $21,585. During the trial, the trial court determined that G. S. Hinsen had been functioning as an unlicensed contractor and, therefore, that G. S. Hinsen could recover from Custom Built Homes only if it could prove its damages by clear and convincing proof. At the conclusion of the proof, the trial court dismissed G. S. Hinsen's claims against Custom Built Homes because its proof of damages was purely speculative. The trial court also gave Custom Built Homes a $932 judgment against G. S. Hinsen. This appeal ensued.

**II.**

---

[1]Although the record is not entirely clear, it appears that Mr. Clark also made periodic payments to G. S. Hinsen.

We turn first to the trial court's conclusion that G. S. Hinsen could not recover from Custom Built Homes because it was an unlicensed contractor. G. S. Hinsen takes issue with this conclusion on the ground that it is a licensed interior designer and that it "did not intend for its involvement in this project to be that of a contractor." Notwithstanding G. S. Hinsen's intentions, it was performing contracting services covered by the Contractor's Licensing Act of 1976. However, its failure to be properly licensed did not prevent it from filing suit against Custom Built Homes.

When G. S. Hinsen entered into its contract with Mr. Clark in 1992, Tenn. Code Ann. § 62-6-103(a)(1) required all persons engaging or offering to engage in "contracting" to be licensed by the state contractor's licensing board. Tenn. Code Ann. § 62-6-102(1)(A) defined "contracting" as

> undertaking, for a fixed price, fee, commission, or gain of whatever nature, to construct, erect, alter, repair, supervise, superintend, oversee, direct, or in any manner assume charge of the construction, erection, alteration, or repair of part or all of any structure, or private work or utility of any nature or character whatsoever . . . where the cost of the completed work, or of different projects under a single contract, equals or exceeds twenty-five thousand dollars ($25,000).

The definition explicitly excluded services performed by licensed architects and engineers but did not exclude the services of interior designers.

An employee of G. S. Hinsen described the company's business to include construction management services. Under the facts of this case, it is clear that Mr. Clark was paying G. S. Hinsen a fee to superintend, oversee, and assume charge of the construction of the renovations to his house. Accordingly, G. S. Hinsen was performing "contracting" services which required a license.

The purpose of the Contractor's Licensing Act of 1976 is to safeguard the public's safety and property. *See Farmer v. Farmer*, 528 S.W.2d 539, 542 n.1 (Tenn. 1975); *Winter v. Smith*, 914 S.W.2d 527, 538 (Tenn. Ct. App. 1995). In order to induce persons engaging in contracting to become licensed, the Tennessee Supreme Court created a common law disability preventing unlicensed contractors from using the courts to collect payment for their work, even under the doctrine of quantum meruit. *See Chedester v. Phillips*, 640 S.W.2d 207, 208 (Tenn. 1982); *Farmer v.*

*Farmer*, 528 S.W.2d at 542. This harsh rule was later modified to permit unlicensed contractors to recover their actual documented expenses if they could present clear and convincing evidence of these expenses. *See* Tenn. Code Ann. § 62-6-103(c); *Gene Taylor & Sons Plumbing Co. v. Corondolet Realty Trust*, 611 S.W.2d 572, 577 (Tenn. 1981).

The trial court evidently determined that Tenn. Code Ann. § 62-6-103(c) applied to G. S. Hinsen's claim. However, in doing so, it overlooked the decisions holding that the common-law restriction on an unlicensed contractor's access to court does not apply to disputes between contractors and other licensed professionals in the construction business. *See Gene Taylor & Sons Plumbing Co. v. Corondolet Realty Trust*, 611 S.W.2d at 575-56; *Wiltcher v. Bradley*, 708 S.W.2d 407, 409 (Tenn. Ct. App. 1985). This is not a case in which G. S. Hinsen is attempting to collect its fee or its expenses from Mr. Clark. Rather, this case is nothing more than a contract dispute between the company who contracted with the owner to renovate the owner's house and the company with whom this contractor contracted to perform the work. Under these circumstances, neither *Gene Taylor & Sons Plumbing Co. v. Corondolet Realty Trust* nor Tenn. Code Ann. § 62-6-103(c) had any application to G. S. Hinsen's claims against Custom Built Homes.

## III.

We turn next to the adequacy of G. S. Hinsen's proof of damages. In light of our previous finding that Tenn. Code Ann. § 62-6-103(c) did not apply to G. S. Hinsen's claim against Custom Built Homes, we find that the trial court erred by requiring G. S. Hinsen to prove its claim for damages with clear and convincing evidence. However, this error does not necessarily require reversal of the judgment if G. S. Hinsen failed to carry its proper burden of proof with regard to its breach of contract claim.

The essential elements of any breach of contract claim include (1) the existence of an enforceable contract, (2) nonperformance amounting to a breach of the contract, and (3) damages caused by the breach of the contract. *See Life Care Ctrs. of Am., Inc. v. Charles Town Assocs. Ltd. Partnership, LPIMC, Inc.*, 79 F.3d 496, 514 (6th Cir. 1996). G. S. Hinsen proved the existence of two contracts with Custom Built

Homes stemming from the two proposals submitted by Custom Built Homes in May 1992 and September 1992. Accordingly, the success of G. S. Hinsen's breach of contract claim hinges on the adequacy of its evidence concerning the remaining two elements of a breach of contract claim.

The evidence concerning whether Custom Built Homes breached its contracts is much less clear. The trial court determined that "some of the [interior] work could have been improved" but that Custom Built Homes had not been given an opportunity to remedy the defects prior to litigation. The trial court also found that G. S. Hinsen has failed to prove that the fence and barn were not properly constructed. Our review of the evidence under Tenn. R. App. P. 13(d) causes us to have some concern about the trial court's conclusions concerning whether the "evidentiary scales tip, no matter how slightly,"[2] in favor of Custom Built Homes with regard to each and every part of the work alleged to be defective. However, we need not determine whether the evidence preponderates against the trial court's findings regarding the quality of the work because of the clear shortcomings in G. S. Hinsen's proof of damages.

Damages in breach of contract cases are nothing more than payment in money for actual losses caused by the breach of contract. Only persons who have actually sustained an injury, *see Collins v. East Tenn., Va. & Ga. R.R.*, 56 Tenn. (9 Heisk.) 841, 850-51 (1872); *Aycock v. Nashville, Chattanooga & St. Louis Ry.*, 4 Tenn. App. 655, 667 (1927), or who have suffered an actual loss, *see Western Union Tel. Co. v. Green*, 153 Tenn. 59, 82-83, 281 S.W. 778, 785 (1926), may recover damages.

Parties are not entitled to uncertain, contingent, or speculative damages. *See Moore Constr. Co. v. Clarksville Dep't of Elec.*, 707 S.W.2d 1, 15 (Tenn. Ct. App. 1985); *Maple Manor Hotel, Inc. v. Metropolitan Gov't of Nashville and Davidson County*, 543 S.W.2d 593, 599 (Tenn. Ct. App. 1975). Damages will be considered uncertain or speculative when their existence is uncertain, *see Jennings v. Hayes*, 787 S.W.2d 1, 3 (Tenn. Ct. App. 1989); *Cummins v. Brodie*, 667 S.W.2d 759, 765 (Tenn. Ct. App. 1983), or when the proof is insufficient to enable a trier of fact to make a fair and reasonable assessment of damages. *See Wilson v. Farmers Chem. Ass'n, Inc.*, 60

---

[2]*See Stinson v. Carpenter*, App. No. 01A01-9601-CV-00036, 1997 WL 24877, at *2 (Tenn. Ct. App. Jan. 24, 1997) (No Tenn. R. App. P. 11 application filed).

Tenn. App. 102, 111, 444 S.W.2d 185, 189 (1969). Damages need not be proved with mathematical certainty, *see Airline Constr., Inc. v. Barr*, 807 S.W.2d 247, 274 (Tenn. Ct. App. 1990), but rather with only reasonable certainty. *See Lamons v. Chamberlain*, 909 S.W.2d 795, 801 (Tenn. Ct. App. 1993).

G. S. Hinsen has failed to prove that it has been actually damaged by Custom Built Homes's purported breach of contract. The faulty workmanship, if it occurred, damaged Mr. Clark's home. Since Mr. Clark has already paid the full, agreed-upon price for the renovations, G. S. Hinsen has received the full benefit of its bargain with Mr. Clark and thus has not been injured.[3]

G. S. Hinsen could theoretically be damaged if Mr. Clark could require G. S. Hinsen to correct the defective work at its own cost. Presently, the extent of this potential liability is completely speculative. The record contains no evidence that Mr. Clark has or could make an enforceable demand on G. S. Hinsen to repair the allegedly defective work,[4] or that G. S. Hinsen has actually corrected any of the allegedly defective work. Nor does the record contain any evidence of the actual cost of any corrective work that may have been performed.

After listening to all the evidence, the trial court concluded that the existence of damages to G. S. Hinsen was speculative. We agree and, accordingly, find that the trial court was fully justified in dismissing G. S. Hinsen's counterclaim against Custom Built Homes on the ground that G. S. Hinsen failed to present adequate proof of its damages.

**IV.**

---

[3]The record contains no factual basis to conclude that G. S. Hinsen was asserting Mr. Clark's damage claim. G. S. Hinsen's lawyer stated at the outset of the trial that his client was not suing Custom Built Homes as Mr. Clark's agent. While he argued later that Mr. Clark had "in essence" assigned its claim for damages to G. S. Hinsen, the record contains no competent proof of the claimed assignment.

[4]The only evidence in the record concerning an agreement between Mr. Clark and G. S. Hinsen concerning the correction of the defective work is that G. S. Hinsen had agreed "to take care of all the problems with the fence, with the barn, with the house" out of any proceeds it recovered from Custom Built Homes.

As a final matter, G. S. Hinsen complains that the trial court denied its motion for new trial without affording it a hearing. It characterizes the trial court's action as a "drastic measure" and as "an abuse of discretion." We disagree because the manner in which the trial court considered and acted upon the motion was consistent with Rule 5.02 of the Local Rules for the Twenty-First Judicial District.

G. S. Hinsen's lawyer filed a motion for new trial on July 20, 1995 - four days before the trial court entered the judgment. He also set the motion on the trial court's July 31, 1995 motion docket, apparently overlooking Local Rule 5.02 which expressly provides that motions for new trial will not be set for hearing except upon direction of the trial court. After the judgment was entered on July 24, 1995, the trial court reviewed G. S. Hinsen's motion for new trial and supporting memorandum and on July 26, 1995, entered an order denying the motion.

The Tennessee Rules of Civil Procedure do not give litigants a right to insist on oral argument prior to the submission and determination of motions. While Tennessee's courts have never confronted this question directly, our federal counterparts have consistently held that district courts have considerable discretion whether or not to allow oral argument on motions and that their decisions will be rarely overruled. *See Borden, Inc. v. Meiji Milk Prods. Co.*, 919 F.2d 822, 828 (2d Cir. 1990); *Domegan v. Fair*, 859 F.2d 1059, 1065 (1st Cir. 1988); *U.S.F.&G. v. Lawrenson*, 334 F.2d 464, 467 (4th Cir. 1964); *Tomar Elec., Inc. v. Whelen Tech., Inc.*, 819 F. Supp. 871, 873 n.1 (D. Ariz. 1992). The Federal Rules of Civil Procedure even expressly authorize district courts to adopt local rules of practice governing when or if oral arguments on motions will be permitted. *See* Fed. R. Civ. P. 78; M.D. Tenn. R. 8(b)(1); *Lewis, Lewis & Van Etten, Inc. v. MCI Telecomm. Corp.*, 138 F.R.D. 25, 26 (E.D.N.Y. 1991).

The Tennessee Rules of Civil Procedure do not contain a rule analogous to Fed. R. Civ. P. 78. However, trial courts may adopt local rules of practice that do not conflict with the Tennessee Rules of Civil Procedure. *See* Tenn. Code Ann. § 16-2-511 (1994); Tenn. S. Ct. R. 18; *Brown v. Daly*, 884 S.W.2d 121, 123-24 (Tenn. Ct. App. 1994). Thus, in the absence of a rule requiring otherwise, Tennessee's trial courts may adopt local rules permitting them to consider and act on motions without oral argument.

Our rules of practice require motions to "state with particularity the grounds therefor, and . . . the relief or order sought." *See* Tenn. R. Civ. P. 7.02. Thus, a properly prepared motion accompanied by a memorandum of law should thoroughly appraise the trial court of the specific relief requested and the reasons why the requested relief should be granted. It follows, therefore, that oral argument in most cases serves mainly to restate points already made in the motion and supporting memorandum of law. Under these circumstances, we cannot say that the trial court acted improperly by considering and acting on G. S. Hinsen's motion for new trial without oral argument.

## V.

We affirm the judgment awarding Custom Built Homes $932 plus interest and dismissing G. S. Hinsen's counterclaim and remand the case to the trial court for whatever further proceedings may be required. We tax the costs of this appeal to G. S. Hinsen Company, Inc., and its surety for which execution, if necessary, may issue.

_____
WILLIAM C. KOCH, JR., JUDGE

CONCUR:


_____
HENRY F. TODD, PRESIDING JUDGE
MIDDLE SECTION


_____
BEN H. CANTRELL, JUDGE