IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
October 9, 2019 Session

## JOSE SIFUENTES, D/B/A JOSE'S ELECTRIC v. D.E.C., LLC

**Appeal from the Chancery Court for Davidson County**
**No. 18-0774-III      Ellen Hobbs Lyle, Chancellor**

———————————————————

### No. M2018-02183-COA-R3-CV

———————————————————

A general contractor hired a subcontractor to install wiring and machinery for a bowling alley. The subcontractor completed the work, but the general contractor failed to pay the subcontractor's last five invoices. The subcontractor sued the general contractor for breach of contract, quantum meruit, promissory estoppel, and promissory fraud. The general contractor moved to dismiss, asserting that the subcontractor was unlicensed. The trial court granted the motion based on the subcontractor's failure to comply with Tennessee Code Annotated § 62-6-103(b) (2019). Applying the standard of review applicable to a motion for summary judgment, we conclude that the trial court erred in dismissing the quantum meruit claim based upon the statute. We affirm in all other respects.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed in Part; Reversed in Part; and Case Remanded**

W. NEAL MCBRAYER, J., delivered the opinion of the court, in which FRANK G. CLEMENT, JR., P.J., M.S., and ANDY D. BENNETT, J. joined.

Neil M. McIntire and William B. Jakes IV, Nashville, Tennessee, for the appellant, Jose Sifuentes.

John O. Belcher and James W. White, Nashville, Tennessee, for the appellee, D.E.C., LLC.

# OPINION

## I.

### A.

A commercial tenant hired D.E.C., LLC and/or National Resources Company, LLC ("NRC") to construct a bowling alley. D.E.C. subcontracted with Jose Sifuentes to "to install electrical wiring and lighting and bowling alley equipment and/or machinery." Mr. Sifuentes owned and operated a sole proprietorship known as Jose's Electric. D.E.C. agreed to pay Mr. Sifuentes a specified hourly rate for Mr. Sifuentes's services and the services of his employees.

After Mr. Sifuentes and his employees began working on the bowling alley project, Mitchell Dowdy, on behalf of D.E.C., notified Mr. Sifuentes that the completion deadline was October 31, 2011. Mr. Sifuentes explained that he would need to hire additional employees at a higher hourly rate to meet the new deadline. Mr. Dowdy agreed to pay the increased cost for the expedited work. So Mr. Sifuentes hired the necessary additional workers.

Mr. Sifuentes submitted weekly invoices to D.E.C. D.E.C. paid for all work performed through August 27, 2011, including one week at the increased hourly rate. But D.E.C. did not pay his September 7 invoice. When Mr. Sifuentes asked D.E.C. about the outstanding invoice, he was told that "he needed to complete the work in order for D.E.C. to receive payment from the general contractor, NRC."

Mr. Sifuentes also had a contract with NRC to perform electrical work on another project in the same building. Mr. Sifuentes informed NRC that his employees could not keep working on the bowling alley because D.E.C. had not paid his latest invoice. NRC paid Mr. Sifuentes $33,000 to keep his employees on the job. But NRC warned Mr. Sifuentes that if he stopped working on the bowling alley, NRC would end their relationship.

NRC's one-time payment was not enough to cover Mr. Sifuentes's labor costs through completion of the bowling alley. So Mr. Sifuentes liquidated his personal savings and retirement funds to pay his employees.

Mr. Sifuentes finished the bowling alley on time. But D.E.C. never paid for any work performed after August 27. Mr. Sifuentes's unpaid invoices totaled $134,002.88.

B.

Mr. Sifuentes sued D.E.C. The verified complaint sought recovery under a variety of theories including breach of contract, promissory estoppel, promissory fraud, and quantum meruit. The complaint alleged that D.E.C. owed Mr. Sifuentes $101,002.88 for work performed on the bowling alley.[1] The complaint also sought consequential and punitive damages.[2]

D.E.C. moved to dismiss the complaint for failure to state a claim. *See* Tenn. R. Civ. P. 12.02(6). In support of the motion, D.E.C. submitted evidence that neither Mr. Sifuentes nor Jose's Electric had a contractor's license.[3] *See* Tenn. Code Ann. § 62-6-102(4)(A)(ii) (2019) (defining "contractor" to include an "electrical subcontractor"). Citing Tennessee Code Annotated § 62-6-103(b) (2019), D.E.C. argued that an unlicensed contractor's only recourse was a statutory cause of action to recover "actual documented expenses" proven by clear and convincing evidence. And Mr. Sifuentes had not sought recovery under the statute.

In an affidavit, Mr. Sifuentes responded that Mr. Dowdy of D.E.C. told him that he would be "operating under a licensed contractor and did not have to worry about securing a permit." He also argued that his complaint included a request for actual damages as documented in his attached invoices.

The trial court found that Mr. Sifuentes was unlicensed when he contracted with D.E.C. to perform electrical work on the bowling alley. And the court agreed that the only available cause of action for an unlicensed contractor was a statutory one. Tennessee Code Annotated § 62-6-103(b) "eliminate[d] all other causes of action with respect to claims by an unlicensed contractor." The court dismissed the complaint with prejudice because "[s]ubstantively and procedurally," Mr. Sifuentes failed to comply with the statute.

---

[1] This amount represented the total outstanding invoices minus NRC's $33,000 payment.

[2] Mr. Sifuentes claimed that, because he was never paid for completing the bowling alley, he "lost additional electrical work in the amount of at least $9,000." And, due to the resulting lack of funds, he lost his business and his home.

[3] Attached to the motion to dismiss was an affidavit purporting to authenticate a licensure report downloaded from the website of the Tennessee Department of Commerce and Insurance.

## II.

### A.

Our first task is to determine the appropriate standard of review. The parties erroneously assume that we should review the trial court's decision under the standard of review applicable to a Rule 12.02(6) motion to dismiss. But the trial court did not confine its review to the pleadings. Instead, the court chose to consider the entire record, including the extraneous evidence submitted by the parties. Under Rule 12.02,

> [i]f, on a motion asserting the defense numbered (6) to dismiss for failure to state a claim upon which relief can be granted, matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56.

Tenn. R. Civ. P. 12.02.

The trial court may consider exhibits attached to the complaint or items required to be attached under Rule 10.03 without converting a motion to dismiss to a motion for summary judgment. *Belton v. City of Memphis*, No. W2015-01785-COA-R3-CV, 2016 WL 2754407, at *4 (Tenn. Ct. App. May 10, 2016); *Ivy v. Tenn. Dep't of Corr.*, No. M2001-01219-COA-R3-CV, 2003 WL 22383613, at *3 (Tenn. Ct. App. Oct. 20, 2003). But "any written or oral evidence" submitted by the parties "that provides some substantiation for and does not merely reiterate what is said in the pleadings" is "outside the pleadings." *Patton v. Estate of Upchurch*, 242 S.W.3d 781, 786 (Tenn. Ct. App. 2007) (quoting *BJC Health Sys. v. Columbia Cas. Co.*, 348 F.3d 685, 687 (8th Cir. 2003)). Here, the materials submitted by the parties contained information beyond the allegations in the complaint. So the motion should have been treated as a motion for summary judgment.[4]

### B.

A trial court's decision on a motion for summary judgment enjoys no presumption of correctness on appeal. *Martin v. Norfolk S. Ry. Co.*, 271 S.W.3d 76, 84 (Tenn. 2008); *Blair v. W. Town Mall*, 130 S.W.3d 761, 763 (Tenn. 2004). We review the summary judgment decision as a question of law. *Rye v. Women's Care Ctr. of Memphis, MPLLC*,

---

[4] We are satisfied that Mr. Sifuentes had fair notice and a reasonable opportunity to "set forth specific facts showing that there is a genuine issue for trial." *See* Tenn. R. Civ. P. 56.06. Mr. Sifuentes did not object to the additional evidence D.E.C. submitted or seek additional time for discovery. Rather, he submitted his own affidavit in which he conceded that he was unlicensed.

4

477 S.W.3d 235, 250 (Tenn. 2015); *Martin*, 271 S.W.3d at 84; *Blair*, 130 S.W.3d at 763. Thus, we review the record de novo and make a fresh determination of whether the requirements of Rule 56 of the Tennessee Rules of Civil Procedure have been met. *Eadie v. Complete Co.*, 142 S.W.3d 288, 291 (Tenn. 2004); *Blair*, 130 S.W.3d at 763.

A Rule 56 motion "addresses . . . the merits of the litigation." *Brick Church Transmission, Inc. v. S. Pilot Ins. Co.*, 140 S.W.3d 324, 328 (Tenn. Ct. App. 2003). Summary judgment is appropriate when "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Tenn. R. Civ. P. 56.04. In reviewing the record, we "must take the strongest legitimate view of the evidence in favor of the nonmoving party, allow all reasonable inferences in favor of that party, and discard all countervailing evidence." *Byrd v. Hall*, 847 S.W.2d 208, 210-11 (Tenn. 1993). We will uphold the trial court's decision only if the undisputed facts show that the moving party was entitled to judgment as a matter of law. *White v. Lawrence*, 975 S.W.2d 525, 529 (Tenn. 1998).

Determining whether Mr. Sifuentes's claims are precluded by Tennessee Code Annotated § 62-6-103(b) necessitates statutory interpretation. *See* ANTONIN SCALIA & BRYAN A. GARNER, READING LAW: THE INTERPRETATION OF LEGAL TEXTS 53 (2012) ("Every application of a text to particular circumstances entails interpretation."). Statutory interpretation is a question of law, which we review de novo, with no presumption of correctness given to the court below. *Wallace v. State*, 121 S.W.3d 652, 656 (Tenn. 2003).

Our goal in statutory interpretation is to "ascertain and effectuate the legislature's intent." *Kite v. Kite*, 22 S.W.3d 803, 805 (Tenn. 1997). When a statute's language is unambiguous, we derive legislative intent from the statute's plain language. *Carson Creek Vacation Resorts, Inc. v. Dep't of Revenue*, 865 S.W.2d 1, 2 (Tenn. 1993). The words used in the statute should be given their natural, ordinary meaning "in the context in which they appear in the statute and in light of the statute's general purpose." *Lee Med., Inc. v. Beecher*, 312 S.W.3d 515, 526 (Tenn. 2010). But, when a statute's language is subject to several interpretations, we also consider the broader statutory scheme, the statute's general purpose, and other sources to ascertain legislative intent. *Wachovia Bank of N.C., N.A. v. Johnson*, 26 S.W.3d 621, 624 (Tenn. Ct. App. 2000).

D.E.C. argues that Tennessee Code Annotated § 62-6-103(b), a provision of the Contractor's Licensing Act, creates a statutory cause of action for unlicensed contractors. We disagree. The statute does not abrogate the common law remedy available to an unlicensed contractor in a dispute with another professional. Rather, the statute limits the measure of recoverable damages, consistent with the common law.

Under the common law, contracts between an unlicensed contractor and a property owner were considered illegal. *Farmer v. Farmer*, 528 S.W.2d 539, 541 (Tenn. 1975).

As a general rule, an unlicensed contractor could not recover damages from a property owner for breach of contract or under a quantum meruit theory.[5]  *Id.* at 542.  In 1981, our supreme court recognized that different considerations applied in a dispute between contractors.  *Gene Taylor & Sons Plumbing Co. v. Corondolet Realty Tr.*, 611 S.W.2d 572, 575-76 (Tenn. 1981).  In such disputes, the court held that an unlicensed contractor had a viable quantum meruit claim against another professional in the construction business.  *Id.* at 576.  But the measure of recoverable damages was limited to "actual expenses in the form of labor and materials expended on the project as shown by clear and convincing proof."  *Id.* at 577.

Although the General Assembly has the constitutional and legislative authority to abrogate the common law, the intention to abrogate must be clear.  *State v. Howard*, 504 S.W.3d 260, 270 (Tenn. 2016).  We are "not [to] presume that the legislature intended to change the common law by implication."  *Heirs of Ellis v. Estate of Ellis*, 71 S.W.3d 705, 712 (Tenn. 2002).  Even where the intention to abrogate is clear, the alteration in the common law extends no "further than the statute declares or necessarily requires."  *Shore v. Maple Lane Farms, LLC*, 411 S.W.3d 405, 423 (Tenn. 2013).  So "if a statute does not include and cover such a case, it leaves the law as it was before its enactment."  *Guy v. Mut. of Omaha Ins. Co.*, 79 S.W.3d 528, 536 (Tenn. 2002) (quoting *Lavin v. Jordon*, 16 S.W.3d 362, 368 (Tenn. 2000)).

The relevant statutory language provides:

(b) Any contractor required to be licensed under this part who is in violation of this part or the rules and regulations promulgated by the board shall not be permitted to recover any damages in any court other than actual documented expenses that can be shown by clear and convincing proof.

Tenn. Code Ann. § 62-6-103(b).  Giving these words their natural and ordinary meaning, we conclude that the legislature intended to limit the measure of recoverable damages for contractors who are in violation of the licensing act or its related rules and regulations.  The statute does not create a new cause of action.  And we see no indication that the legislature intended to eliminate the common law remedy for disputes between contractors.  Rather, the statute is consistent with the measure of damages allowed at common law.  *See Gene Taylor & Sons Plumbing Co.*, 611 S.W.2d at 577.  So the trial court erred in dismissing the complaint because "the Plaintiff has failed to assert the only available cause of action under Tenn. Code Ann. § 62-6-103(b)."

---

[5] The supreme court left open the possibility of a fraud claim.  *Farmer*, 528 S.W.2d at 542 (noting the absence of any proof of fraud or overreaching by the property owners).

C.

Although we disagree with the basis for the trial court's decision, we may affirm the entry of summary judgment on other grounds. *See Bobo v. City of Jackson*, 511 S.W.3d 14, 21-22 (Tenn. Ct. App. 2015); *Hill v. Lamberth*, 73 S.W.3d 131, 136 (Tenn. Ct. App. 2001). Mr. Sifuentes never obtained the necessary contractor's license for the bowling alley project. Based on the undisputed facts in this record, we conclude that D.E.C. was entitled to a judgment as a matter of law on all claims except for his quantum meruit claim.

As an unlicensed contractor, the only damages Mr. Sifuentes may recover are actual documented expenses established by clear and convincing evidence. *See* Tenn. Code Ann. § 62-6-103(b); *Gene Taylor & Sons Plumbing Co.*, 611 S.W.2d at 577. Thus, his claims for consequential and punitive damages were properly dismissed.

Mr. Sifuentes also cannot recover for breach of contract. An unlicensed contractor may not sue to enforce an illegal contract, even in a dispute with another licensed professional. *See Gene Taylor & Sons Plumbing Co.*, 611 S.W.2d at 577 ("In permitting recovery against W & W Construction Co. under a theory of quantum meruit, we do not intend to approve unlawful conduct or to enforce an illegal contract."). And he cannot use promissory estoppel to achieve the same end—enforcement of an illegal contract. *See Alden v. Presley*, 637 S.W.2d 862, 864 (Tenn. 1982) ("The reason for the doctrine is to avoid an unjust result, and its reason defines its limits."). So we affirm the dismissal of both the breach of contract and promissory estoppel claims.

And we affirm the dismissal of the promissory fraud claim. "[P]romissory fraud is a type of fraud." *Shahrdar v. Glob. Hous., Inc.*, 983 S.W.2d 230, 237 (Tenn. Ct. App. 1998). A key component of a promissory fraud claim is "a promise of future action without the present intention to carry out the promise." *Keith v. Murfreesboro Livestock Mkt., Inc.*, 780 S.W.2d 751, 754 (Tenn. Ct. App. 1989). Mr. Sifuentes relies on D.E.C.'s promise to pay him additional compensation to complete the bowling alley by October 31. We conclude that Mr. Sifuentes cannot establish that D.E.C. made this promise with the intent not to perform. D.E.C. paid one invoice at the higher rate. Payment in accordance with the promise is contrary to any intent not to perform. And the other evidence in this record, namely Mr. Sifuentes's subjective belief that D.E.C. never intended to pay and D.E.C.'s subsequent failure to pay, is legally insufficient. *See Fowler v. Happy Goodman Family*, 575 S.W.2d 496, 499 & n.3 (Tenn. 1978).

But the trial court erred in dismissing the quantum meruit claim. Mr. Sifuentes completed the installation of the bowling alley by the deadline, but was not paid for all of the work. He seeks recovery of $101,002.88 in unpaid hourly wages. He submitted his invoices as documentation of his actual expenses. D.E.C. came forward with evidence that Mr. Sifuentes was not a licensed contractor. Even so, an unlicensed contractor may

7

seek recovery in quantum meruit from another contractor. *Gene Taylor & Sons Plumbing Co.*, 611 S.W.2d at 576. While D.E.C. argues that Mr. Sifuentes's invoices may include profit and overhead, which are not recoverable, there is no evidence in the record to support this argument. *See id.* at 577. At this stage of the litigation and on this record, D.E.C. is not entitled to a judgment in its favor on the quantum meruit claim.

## III.

Tennessee Code Annotated § 62-6-103(b) does not create a statutory cause of action for unlicensed contractors. Instead, the statute limits an unlicensed contractor's recovery if the contractor has a common law claim. Here, under the undisputed facts, the only common law claim available to Mr. Sifuentes is quantum meruit. So we affirm the dismissal of the breach of contract, promissory estoppel, and promissory fraud claims. And we reverse the dismissal of the quantum meruit claim. Any recovery should be limited in accordance with Tennessee Code Annotated § 62-6-103(b). We remand the cause to the trial court for further proceedings consistent with this opinion.

_____
W. NEAL MCBRAYER, JUDGE